William RUZICKA, Plaintiff-Appellant,
and Cross-Appellee,

v.

GENERAL MOTORS CORPORATION,
a Delaware Corporation, et al., De-
fendants-Appellees, and Cross-Appel-
lants.

Nos. 74–1939–74–1941.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1975.

Decided Sept. 23, 1975.

Rehearing Denied Dec. 9, 1975.
See 528 F.2d 912.

Robert J. Dinges, Glotta, Adelman, Dinges, Taylor, Davis & Middleton, Detroit, Mich., for plaintiff-appellant.

Jordan Rossen, John A. Fillion, J. R. Wheatley, Detroit, Mich., for defendants-appellees.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

We consider an appeal and two cross-appeals from a District Court's judgment that Appellee Unions did not breach their duty of fair representation towards Appellant, a former employee of Appellee General Motors Corporation (GM). Appellant asks that this conclusion be

reversed and that his action against the Unions and GM be reinstated. GM argues that alternative grounds exist for dismissing it from the case. The Unions also assert alternative grounds for dismissal and argue that their cross-claim to send Appellant's grievance to arbitration should have been granted. The arguments raise several significant issues concerning an individual employee's right to fair treatment from his Union, as well as the relationship of arbitration procedures and judicial recourse for aggrieved persons.

On March 31, 1970, Appellant William Ruzicka was discharged for being intoxicated on the job and using threatening and abusive language towards his superiors at GM's Willow Run Plant in Ypsilanti, Michigan. Appellant had worked there for nearly eleven years and had been actively involved in Union activities for much of that time.

Appellant initiated the grievance process under National Agreement between GM and the United Auto Workers by filing a timely grievance protesting his discharge. He did not dispute the essential facts of intoxication and abusive language, but argued that discharge was an "unduly harsh" penalty which was inconsistent with past decisions of umpires interpreting the National Agreement. The Company completed the second step of the grievance process by filing an answer under Paragraph 77 of the National Agreement. The Union began the third step by filing a "notice of unadjusted grievance." To invoke arbitration, the Union was required by Paragraph 37 to file a "statement of unadjusted grievance" simultaneously with GM. The District Court found that Local 166 never filed such a statement, although it had sought and received two time extensions to do so. After the due date for the statement had passed, GM disclaimed further obligation under the National Agreement.

Appellant immediately pursued his intra-Union remedies under Article 31 of the UAW Constitution. Appellant argued that Charles Panter, a Local 166

official, had willfully failed to perform his duty in failing to file the required statement. A trial before a Local 166 Committee resulted in a finding that Panter had been negligent but not guilty of willful inaction. Appeals to higher levels failed.

Appellant also filed charges with the National Labor Relations Board, which investigated but dismissed them.

Appellant instituted further intra-Union action against Local 166 for wrongful processing of his grievance, but this action was unsuccessful at the Local level. An appeal to higher levels was stayed pending resolution of a policy grievance that Panter's successor at Local 166 had filed. The policy grievance, which requested GM's consideration of Appellant's grievance despite the procedural problem, was withdrawn by Local 166 on April 24, 1971.

Rather than appeal the adverse decision on Local 166's processing of the grievance to the UAW's International Executive Board, Appellant filed a complaint in federal court on June 3, 1971. He alleged that Panter's personal "hostility" towards him had caused Panter not to file the statement of unadjusted grievance. He asserted that both the Local and International Unions had thus given him unfair representation, and he alleged that GM's discharge was wrongful and that GM had conspired to discharge him because of his Union activities.

The Unions filed a cross-claim against GM, seeking that the dispute be ordered to arbitration. After denying various pretrial motions, the District Court conducted a hearing limited to the question of unfair representation. It concluded that there was no unfair representation because Panter had merely "neglected" to file the required statement. The Court reasoned, "Mere hostility between the plaintiff and the union official is insufficient to show a breach [of the duty of fair representation under 29 U.S.C. § 157 (1970)]; the plaintiff must show that the hostility tainted the official's

conduct." Since "there was no showing in the case that hostility tainted Panter's processing of the grievance," Appellant's complaint was dismissed, along with the Unions' cross-claim.

We will first consider the question of unfair representation, for if the District Court's conclusion was correct, the action against both the Unions and GM must fail. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). If the District Court erred, there remain for consideration the Unions' and GM's arguments that alternative grounds exist for dismissal. Finally, we must address the Unions' contention that their cross-claim to have Appellant's grievance ordered to arbitration was wrongfully dismissed.

■ Proof of unfair representation by a Union depends on a showing that "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A review of Appellant's complaint and the facts developed at trial convince us that Appellant did not prove that officials of Appellee International Union had acted arbitrarily, discriminatorily, or in bad faith. In *Hines v. Local 377,* 506 F.2d 1153, 1157 (6th Cir. 1974), *cert. granted and limited to other ground,* 421 U.S. 928, 95 S.Ct. 1654, 44 L.Ed.2d 85 (1975), we stated:

> There was no claim that the local union was acting for or at the direction of the International, and appellant Hines, when asked on deposition what steps the International failed to take in investigating the company's charge replied: "I don't know of any steps that they should or should not have taken." Since there was no genuine issue as to a material fact about the conduct of the International Union, the grant of summary judgment was proper.

The *Hines* reasoning applies here, and we affirm the District Court's finding of no unfair representation by the Interna-

tional Union. We turn now to consideration of the liability, if any, of Local 166.

As discussed above, the District Court concluded that Local 166 had not unfairly represented Appellant because Agent Panter had merely "neglected" to file the required Statement of Unadjusted Grievance and had not acted in bad faith. Appellee Local urges that this conclusion be upheld, asserting that bad faith is an essential element of any claim of unfair representation.

■ We do not find the duty of fair representation so limited. In *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that union actions which are "arbitrary, discriminatory, *or* in bad faith" (emphasis added) could establish a breach of the duty of fair representation. As we held in *St. Clair v. Local 515,* 422 F.2d 128, 130 (6th Cir. 1969),

> The phrase "fair representation" is something of a term of art, and the standards by which we are bound have not been set down explicitly in a code. However, the Supreme Court has spoken clearly enough to guide us here. See *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Court there held that the duty of fair representation does not require a union to exhaust every theoretically available procedure simply on the demand of a union member. 386 U.S. at 192 (87 S.Ct. 903). . . . However, the ignoring or the perfunctory processing of a grievance may violate the duty of fair representation. *Vaca v. Sipes,* 386 U.S. at 194, 87 S.Ct. at 903.

We agree with the Fourth Circuit's analysis of the three-pronged standard established in *Vaca* for determining whether a union has unfairly represented one of its members:

> A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in com-

plete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.

*Griffin v. International Union of United Automobile Workers,* 469 F.2d 181, 183 (4th Cir. 1974). *See also De Arroyo v. Sindicato De Trabaiadores Packinghouse, AFL–CIO,* 452 F.2d 281 (1st Cir.) *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).[1]

We believe that the District Court misread *Vaca* when it held that "bad faith" must be read into the separate and independent standards of "arbitrary" or "discriminatory" treatment. Union action which is arbitrary or discriminatory need not be motivated by bad faith to amount to unfair representation.

■ In the instant case Local 166 officials discussed Appellant's grievance among themselves and with GM personnel, but inexplicably neglected to take Appellant's grievance to the third stage of processing by not filing a Statement of Unadjusted Grievance with the appropriate GM official. Having sought and been granted two extensions of time to file the Statement and at no time having decided that Appellant's claim was without merit, the Local allowed the final deadline to pass without filing the Statement or requesting a further extension. At this point the Local did not inform either Appellant or GM that it had decided either to continue or to stop processing Appellant's grievance. Such negligent handling of the grievance, unrelated as it was to the merits of Appellant's case, amounts to unfair representation. It is a clear example of arbitrary and perfunctory handling of a grievance.

■ The Unions argue that *Dill v. Greyhound Corp.,* 435 F.2d 231, 238 (6th Cir. 1970), *cert. denied,* 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971), stands for the proposition that bad faith is an essential element of any claim of unfair representation. *Dill* held that bad faith was required to support a claim of unfair representation where the union in question had made a decision that the individual's grievance was without merit. In *Dill* we held that the interpretation by the company and union of the collective bargaining agreement was reasonable, so that refusing to invoke arbitration of Dill's grievance was a legitimate and proper way for the union to reject his view of the union's contract with the company. We do not deviate from our holding in *Dill* to conclude that when a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step towards resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation. As the *Vaca* Court stated,

> [A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . .
>
> In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances.[2]

The Union made no decision as to the merits of Appellant's grievance, but merely allowed it to expire out of negligent and perfunctory handling. Thus, we must reverse the District Court's conclusion that Local 166 did not unfairly represent Appellant.

Local 166 argues through its cross-appeal that it should have been dismissed

**1.** *De Arroyo* is parallel to the instant case. There, seven employees were discharged allegedly because of automation but in violation of seniority provisions. Their union failed to press their grievance out of an honestly mistaken belief that certain NLRB relief extended to them. The First Circuit found that good-

faith mistaken belief was an unacceptable excuse for not pursuing the grievances and amounted to arbitrary and perfunctory processing, which *Vaca* explicitly stated was one ground for a finding of unfair representation.

**2.** 386 U.S. at 191, 194, 87 S.Ct. at 917, 919.

from the case for four alternative reasons.

First, it contends that Appellant should be collaterally estopped from pursuing his action because an intra-Union forum had decided his case adversely to him.

A Trial Committee of Local 166, to which Appellant took his *case against Panter under Article 31 of the UAW Constitution,* decided that Panter was not guilty of "consciously and purposely intending to allow a grievance to expire." The International Union's Appeals Committee agreed with this conclusion, stating,

> [T]here is no evidence of any kind to indicate beyond a reasonable doubt that [Panter's] failure to secure management's Statements was motivated by personal and political differences over the years between him and [Appellant].

The UAW's Public Review Board, which sustained the International Executive Board's affirmance of its Appeals Committee, noted that the only issue before Local 166's Trial Committee

> was whether Mr. Panter intentionally let the grievance fail and in so doing was motivated by political considerations; the issue of his negligence or lack thereof was irrelevant.

■ The District Court held in a pretrial order that the Trial Committee's decision did not collaterally estop Appellant from arguing in federal court that Panter had acted out of personal hostility in not filing a Statement of Unadjusted Grievance, in view of the "beyond a reasonable doubt" standard which prevailed before that forum. We agree with the District Court.

Furthermore, in view of our holding, it is clear that the issue of Panter's negligence was not resolved adversely to Appellant by the Trial Committee, but that its decision supports the District Court's conclusion that Panter "neglected" to file the required Statement. Local 166's argument in this respect must, therefore, fail.[3]

Second, Local 166 argues that Appellant failed to exhaust his intra-Union remedies and, under *Bsharah v. Eltra Corp.,* 394 F.2d 502 (6th Cir. 1968), should be barred from taking his case to court. Specifically, the Local contends that Appellant should have appealed the adverse decision of the Local's rejection of his intra-Union claim that it had wrongfully processed his grievance.

■ For a period of 27 months, from March 1970 through June 1972, Appellant sought intra-Union relief against Local 166. We agree with the District Court that this was sufficient exhaustion of intra-Union remedies to permit it to hear his case. In *Bsharah* we affirmed the grant of summary judgment against an employee who had "failed to allege or show any attempt to initiate her intra-union remedies prescribed by the constitution and by-laws of the International Union." 394 F.2d at 503. The reason for this requirement is that intra-Union remedies are part and parcel of the industrial in-house procedure for settling labor disputes. The primary benefit of requiring initial submission of employee complaints against a union that refuses to help process a grievance against a company is that internal machinery can settle difficulties short of court action. Thus, federal policy requires "staying the hand of 'judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own internal affairs.'" *Imel v. Zohn Mfg. Co.,* 481 F.2d 181, 183 (10th Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974), *quoting Brady v. Trans-World Airlines,* 401 F.2d 87, 104 (3rd Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 684, 21 L.Ed.2d 691 (1969).

---

**3.** We need not address the problem of when collateral estoppel applies to intra-Union decisions when the adversely affected member alleges in court that the Union acted in breach of its duty of fair representation.

■ Appellant's diligent processing of his complaint through 27 months of intra-Union proceedings is far more than "at least some opportunity" for Local 166 to resolve its dispute with him. The requirement of exhaustion of intra-Union remedies is bottomed on the hope that such procedures will quickly resolve disputes without the delay inherent in the judicial process and with the aid of persons experienced at resolving member-union conflicts short of a full-blown judicial proceeding. When that hope has failed, however, the member is not barred from proceeding to federal court with a claim of unfair representation. To conclude otherwise would allow a union to prevent any claim against it from reaching the stage of litigation by forcing aggrieved members through endless stages of review.

Third, Local 166 maintains that Panter's inaction in failing to file the required Statement was beyond his authority under Union rules, so that it is not liable for his negligence.

■ Panter was Chairman of the Shop Committee of Local 166, and it was his responsibility to file Statements of Unadjusted Grievance with GM officials. His action or inaction in that job was clearly attributable to his principal, Local 166. *Barefoot v. Teamsters Union,* 424 F.2d 1001, 1004–05 (10th Cir.), *cert. denied,* 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1970).

Finally, Local 166 argues that because no damages could be established even if an unfair representation claim were proven, dismissal is proper. It argues that "GM, if any party, would be solely liable to plaintiff."

■ Appellant's complaint asserts that GM and the Unions are jointly and severally liable for his injury. This is not true. When a union breaches its duty of fair representation, the employer remains liable for any damages "attributable solely to the employer's breach of contract," *i. e.,* the wrongful discharge. *Vaca,* 386 U.S. at 197, 87 S.Ct. at 920.

When a breach of the duty of fair representation is shown, however, the Union is liable for that portion of Appellant's injury representing "increases if any in those damages [chargeable to the employer] caused by the union's refusal to process the grievance." *Vaca,* 386 U.S. at 197–98, 87 S.Ct. at 921. Thus, upon a finding of unfair representation, "the court must fashion an appropriate remedy," 386 U.S. at 187, 87 S.Ct. at 915, compensating Appellant from the Union's pocket for those expenses he incurred because of the Union's failure to process his grievance properly.

Since none of the grounds urged in Local 166's cross-appeal requires dismissal of Appellant's complaint against it, we reverse the District Court's judgment in its favor and remand for a finding of appropriate relief.

■ Our holding that the Local breached its duty of fair representation requires reversal of the District Court's dismissal of Appellant's claim against GM. When the Union has failed in its duty to fairly represent an employee, the employer may not invoke the Union's failure to follow procedures set forth in the collective bargaining agreement as a defense to the action of the employee. *Vaca v. Sipes,* 386 U.S. at 185, 87 S.Ct. 903.

GM has filed a cross-appeal which asserts that dismissal of Appellant's claim against it should nonetheless be affirmed on two alternativve grounds. First, it argues that the complaint raises no factual issues and that it is entitled to summary judgment on the merits. Second, GM contends that dismissal should have been granted because of Appellant's failure to exhaust his intra-Union remedies. The District Court rejected both arguments in pre-trial orders.

The second ground is quickly rejected. As we stated above, Appellant sufficiently exhausted his intra-Union remedies to give the District Court jurisdiction *See also Scott v. Anchor Motor Freight, Inc.,* 496 F.2d at 279.

The first ground is that Appellant raised no genuine factual issue concerning his claim that discharge was so excessive a penalty for his offense as to amount to a breach of the collective bargaining agreement between GM and the UAW. There appears to be no dispute that Appellant was intoxicated on the day in question and that he was abusive towards his foreman. Appellant's claim is that discharge was unwarranted in view of past treatment of similar offenses, which allegedly consisted of temporary suspension rather than discharge. His claim as stated in the original complaint was that discharge was "unduly harsh, arbitrary, discriminatory and contrary to past interpretations" of the UAW–GM National Agreement. Appellant filed a motion to amend his complaint to clarify the basis of this allegation, but the record filed on appeal contains no copy of the proposed amended complaint and the District Court took no action on Appellant's motion to amend.

Before trial GM filed a motion for summary judgment, asserting that under Rule 56, F.R.Civ.P., it was entitled to judgment as a matter of law. Its supporting brief argued that because discharge was *permitted* under the National Agreement as a penalty for the offense Appellant allegedly committed, Appellant could not establish that discharge amounted to a breach of contract. The District Court denied this motion, stating:

> [T]he question is whether imposition of the discharge sanction in Ruzicka's case constituted a breach of contract by General Motors and this must be decided on the particular facts of this case.[4]

■ We have reviewed GM's supporting documents which accompanied its motion for summary judgment. The two affidavits and other materials support its claim that discharge is a permissible penalty which was employed once before (and upheld by an arbitrator) in a case somewhat similar to Appellant's.

These materials do not, however, foreclose as a factual question whether discharge was a harsh, arbitrary, and discriminatory penalty in view of all the circumstances of Appellant's situation. Accordingly, we cannot find that Appellant's allegation concerning the discharge is beyond factual dispute, and we cannot overturn the District Court's refusal to grant summary judgment on the merits.

On remand, the District Court will be free to consider Appellant's motion to amend his complaint, and GM will be able to renew its motion for summary judgment. If a renewed motion is accompanied by materials which indicate that discharge is an ordinary penalty for someone in Appellant's position, considering the facts surrounding the discharge, Appellant's seniority, his past work record, and other matters relevant to the issue, Appellant will be required to demonstrate that there remains a factual issue by alleging specific facts to counteract GM's showing. Rule 56(e), F.R.Civ.P.; *R. E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415 (6th Cir. 1975). At this point, however, we may not foreclose Appellant's opportunity to prove his case against GM.

Having reversed the District Court's dismissal of Appellant's claim against Local 166 and GM and having found no alternative basis entitling the Local or GM to dismissal, we are left with a final question. This is raised by the Unions' cross-appeal, which seeks to overturn the District Court's denial of summary judgment concerning their cross-claim against GM and the eventual dismissal thereof.

The cross-claim sought to force GM to process the grievance further or to send it directly to arbitration, despite the Unions' failure to follow procedures mandated by the National Agreement. On May 15, 1973, the District Court ordered the grievance submitted to an Umpire. Included in this Order was the requirement that the Umpire consider the issues of arbitrability and unfair representa-

---

4. Order, Civil No. 36598 (E.D.Mich., filed Apr. 25, 1973).

tion, as well as the propriety of Appellant's discharge. Thus, the District Court originally granted the Unions' motion for summary judgment on their cross-claim, though on terms different from those requested by the Unions.

On August 31, 1973, the District Court impliedly revoked the May 15 Order by ordering that Appellant's charges of unfair representation be submitted to the Court for trial. Only if the Court found unfair representation would the grievance be submitted to a GM–UAW Umpire.

Based on the finding of no unfair representation, the District Court ordered dismissal of the entire action, including the Unions' cross-claim.

The Unions' cross-appeal purports to be an attack on the District Court's denial of all its pre-trial motions. The relief requested is that this Court

> reverse the District Judge's dismissal of the Unions' cross-claim against defendant General Motors and . . . order further processing of plaintiff's contract grievance pursuant to the GM–UAW Agreement or, in the alternative only, modify the Judge's final order to provide that dismissal of said cross-claim was without prejudice.

In view of our reversal of the unfair representation conclusion, we need not decide whether the Unions' cross-claim was well taken had there been no unfair representation. Nor need we decide whether, in that event, further processing of the grievance should be ordered instead of merely providing that dismissal of the cross-claim was without prejudice.

Were we to decide that the District Court should have granted the Unions' motion for summary judgment on their cross-claim, we would affect Appellant's ability to bring his case to a conclusion. The difficulty raised by the Unions'

cross-appeal is that if further processing of the grievance within the GM–UAW structure is ordered, Appellant has been deprived of the opportunity to attain judicial resolution of his claim.

Thus, we are compelled to comment on the proper course of action for the District Court to take on remand. Its choice is basically between ordering the grievance submitted to arbitration or deciding itself the merits of Appellant's claim against GM.

■ This choice embodies two sets of interests. On the one hand, there is the strong interest in settling industrial disputes through arbitration. As discussed in the *Steelworkers Trilogy*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), arbitration "is the substitute for industrial strife. . . . [A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). An individual employee may prefer submitting his grievance to an arbitrator rather than a judge because the arbitrator is not bound to apply only those considerations expressed in the collective bargaining agreement. The parties to such an agreement

> expect that [the arbitrator's] judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a

grievance, because he cannot be similarly informed.[5]

Thus, the Supreme Court held in *Steelworkers* that

[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.[6]

Furthermore, because of its more informal nature, the arbitration proceeding is "an efficient, inexpensive, and expeditious means for dispute resolution." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 58, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974).

■ On the other hand, there is the interest in affording an aggrieved employee a final resolution of his claim. Appellant was discharged on March 31, 1970. Five years is far too long for an employee to await a final decision on his demand for reinstatement with back pay. Further relay would seem unconscionable. Having met the heavy burden of showing that his Union unfairly represented him, Appellant is entitled to a judicial decision on his claim against the employer. *Vaca*, 486 U.S. at 186, 87 S.Ct. 903.

■ We believe that these interests can both be served if the District Court orders arbitration but retains jurisdiction of the case until the claims against the Local and GM are settled. If the National Agreement is interpreted to mean that GM is relieved of its contractual duties because of the Union's failure to follow grievance procedures, the District Court should proceed to award appropriate relief [7] against Local 166 on the un-

fair representation claim. To ensure a prompt conclusion to these proceedings, furthermore, the District Court should consider specifying a particular time within which arbitration should be completed. *See, e. g., Northwest Airlines, Inc. v. Machinists Workers*, 442 F.2d 244, 246 (8th Cir. 1970).

Accordingly, we reverse the District Court's dismissal of the Unions' cross-claim and grant the relief specified.

The Judgment of the District Court is reversed, and the cause is remanded for proceedings consistent with this Opinion. The costs of the main appeal will be divided between GM, on the one hand, and Local 166, on the other, in equal amounts. The costs of the cross-appeal of the Unions will be borne by GM, along with the costs of GM's cross-appeal.

McCREE, Circuit Judge (concurring).

I concur in the holding of the majority opinion that the local union breached the duty of fair representation that it owed appellant. However, I write separately because I do not believe that the local union's handling of the grievance was "arbitrary" or "perfunctory" as the majority opinion determines. The district court determined that the union, through Panter, *neglected* to file a timely statement of unadjusted grievance, and the majority opinion does not overturn this finding. Instead, it characterizes the negligent handling of the grievance as arbitrary and perfunctory.

*Arbitrary* and *perfunctory* are adjectives characterizing *intentional* conduct that is capricious or superficial. Here there was an *unintentional* failure to act that prevented appellant's grievance from being submitted to arbitration.

---

5. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. at 582, 80 S.Ct. at 1352.

6. *Id.* at 582–83, 80 S.Ct. at 1353.

7. The questions of the proper allocation of damages between Local 166 and GM and of the measure of the Local's liability in the event that the grievance is found to be without merit are not before us.

Nevertheless, I would hold that when a statutorily established exclusive bargaining representative fails to file a statement that is a prerequisite for submission of an employee's claim to arbitration, not because the union has made a good faith judgment for a lawful reason that it should not file the document, but merely because of its negligent omission, then it has breached its duty of fair representation.

I do not suggest, however, that a union should be held liable for all negligence in processing an employee's grievance. Such a rule would put the courts in the position of second-guessing union representatives' decisions. In accordance with the "general congressional policy favoring expert, centralized administration, and remedial action" of employee grievances, *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1970), I believe courts should not try to determine whether, in fulfilling its duty of fair representation, a union has adopted the tactic best suited to the needs of an aggrieved employee.

Nevertheless, I believe that a total failure to act, whether negligent or intentional, except for a proper reason, is behavior so egregious that, as in the case of bad faith, hostile discrimination, arbitrariness, or perfunctoriness, the union should be held responsible. We have stated that an action will lie against a union for ".   .   .   such gross mistake or inaction as to imply bad faith." *Balowski v. International Union*, 372 F.2d 829, 834 (1967). It requires only a slight extension of this principle to require the local to answer to a member if it precludes any consideration of the employee's grievance by its sheer neglect to timely file a paper that the employee is prevented by law for filing for himself.

I believe that the incidence of an injury of this magnitude should be shifted from the innocent employee to the union whose flagrant negligence was responsible for it.