Carmel SAID, Plaintiff,

v.

TURNER BROOKS, INC., a Michigan Corporation and Local Union 337, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated voluntary association, jointly and severally, Defendants.

Civ. A. No. 7–70379.

United States District Court, E. D. Michigan, S. D.

Jan. 8, 1980.

Michael L. Pitt, Detroit, Mich., for plaintiff.

Jerome S. Coleman, Southfield, Mich., for Turner-Brooks, Inc.

William Albertson, Birmingham, Mich., for Union.

## MEMORANDUM OPINION

JULIAN ABELE COOK, Jr., District Judge.

This matter comes before this Court on a Motion for Summary Judgment which has been filed by the Defendant Union. The Complaint charges the Union with having breached its duty to represent the Plaintiff under the Labor Management Relations Act § 301, 29 U.S.C. § 185. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Ness v. Safeway Stores, Inc.*, 598 F.2d 558 (9th Cir. 1979); *Fleming v. Chrysler*, 575 F.2d 1187 (6th Cir. 1978).

The parties are in agreement that, in order to raise the issue of a duty to represent, there must be a showing of arbitrary, discriminatory or bad faith conduct by the Union toward an individual member. The parties are in dispute as to whether the language in *Ruzicka v. General Motors*, 523 F.2d 306 (6th Cir. 1975) and *Milstead v. International Bhd. Teamsters*, 580 F.2d 232 (6th Cir. 1978) gives rise to a cause of action for negligence in the processing of the grievance. *See Kleban v. Hygrade Food Prod. Corp.*, 102 LRRM 2773 (E.D.Mich. 1979) (Feikens, J.).

It is undisputed that the grievance was filed some ten months after the Plaintiff was laid off, and that the Collective Bargaining Agreement required a grievance to be filed within ten days of the alleged aggrieved incident. The Plaintiff contends, by way of argument, that the grievance was filed as soon as he discovered that his layoff was tantamount to a discharge. However, the Plaintiff's own deposition testimony indicates that, immediately upon his layoff, he began following the Employer's trucks to determine who was doing "his work" (Plaintiff's Deposition at 36). His deposition also indicates he was not informed that his layoff was permanent until February 18, 1976. Consequently, there appears to be a factual dispute as to whether the grievance was timely filed by the Plaintiff. Even if the grievance is considered to have been timely filed for the purposes of this Motion, the Court believes that, as a matter of law, the Union could have considered the expiration of time that elapsed between the layoff date and the filing of the grievance to determine how it would process such a grievance.

In making this legal observation, the Court is concerned with whether the Union's failure to conduct an investigation during the initial steps of the grievance constitutes arbitrary conduct which would subject the Union to a "failure to represent" cause of action.

It is important to note at this point that the grievance machinery under the Collec-

tive Bargaining Agreement between the Union and the Employer puts the initial burden regarding grievances upon the employee. Step 1 mandates a conference between the employee, Union steward and the employer. Step 2 requires a conference between the Union and the plant manager or his representative; however, before proceeding to Step 2, the employee, under Step 1–A must reduce his grievance to writing on a grievance form which is provided by the Union. This procedure would indicate that the initial conference under Step 1 is not necessarily the responsibility of the Union to initiate. Consequently, it would appear that the responsibility of the Union under the Agreement vests only after the grievant has filed the form.

It appears that a Union representative, Larry Brennan, made a determination that the Plaintiff's grievance was meritless, without ever consulting the Union steward. However, the Union, acting upon the urging of the Plaintiff, did subsequently conduct a Hearing regarding his grievance. According to the Plaintiff, the Hearing, in which one of the witnesses engaged in a heated argument with a member of the Executive Board, was a "farce." After reviewing all of the evidence, the Board disagreed with the Plaintiff's position and decided that the issue relating to his alleged wrongful discharge should not be presented for arbitration. Parenthetically, the Union steward initially learned of the Plaintiff's grievance when the employees returned to work at the conclusion of the Hearing.

It is the belief of the Court that any alleged failure of the Union to conduct an investigation prior to the Hearing is not a material issue of fact, albeit disputed. *Ferdnance v. Automobile Trans. Inc.*, 460 F.Supp. 1206, 1210 (E.D.Mich.1978) (Freeman, J.). Additionally, the Court is of the opinion that the characterization of the Hearing by the Plaintiff, as noted above, as well as the underlying incident, does not constitute a material issue of fact which would justify a rejection of the present Motion.

Consequently, whether the decision not to send the grievance to arbitration was, or was not, correct is not relevant to the inquiry here—to wit, whether this Plaintiff can maintain an action against the Union for unfair representation. *Kleban v. Hygrade Food Prod. Corp.*, 102 LRRM at 2778. The Union argues that the pursuit of a jurisdictional usurpation claim would be an unfair labor practice, as defined in National Labor Relations Act § 8(b)(4)(D), 29 U.S.C. § 158(b)(4)(D), and, therefore, exclusively within the province of the National Labor Relations Board.

Additionally, the Court notes that the Collective Bargaining Agreement, which directly covers the Plaintiff, does not spell out the duties of the employees who are covered by it. More specifically, we do not find any explicit definition of the duties of "Helpers" within the Agreement. By contrast, those contracts that existed during the periods of time which are relevant to these proceedings, between the Employer and the employees whom the Plaintiff claims usurped his job duties, *do* explicitly spell out the job descriptions of the covered employees. Moreover, these contracts specifically identify the duties of the employees to include, *inter alia*, the loading and unloading of various items—the very task that the Plaintiff claims to be exclusively within the "Helpers" province. Finally, it should be noted that the parties have stipulated that the practice, prior to the grievance and layoffs, was for everyone to join in on the loading and unloading work.

Although the Court will not venture to resolve the alleged jurisdictional dispute, it seems, in view of the language of the Agreements and past practices, that it was reasonable, if not correct, for the Union to conclude that the grievance was without merit.

In light of the foregoing, it is unnecessary to resolve the broad question of whether negligence in the processing of a grievance can give rise to a cause of action for failure to represent. Additionally, it is not necessary to decide whether failure to process a grievance, which is totally devoid of

merit, can give rise to such a cause of action. The undisputed facts indicate that the Union conducted a Hearing touching upon, and addressing, the merits of the grievance. In view of this, the Court is of the belief that even under a simple negligence standard, which the Court adopts for the purpose of this Motion, there is no *material* issue of fact in dispute. Although the Plaintiff characterized the Hearing, to which reference has been made, as a "farce," he has not brought any material testimony, affidavit or other substantive evidence to the attention of the Court which would specifically indicate how the Union acted negligently in the processing of his grievance via the hearing machinery. It is beyond speculation that the Union issued a well reasoned conclusion regarding why it believed the grievance was without merit (See Plaintiff's Exhibit 6). Indeed, counsel was even consulted regarding the matter.

Of course, if the negligence standard applied was the more stringent one which was articulated by Judge Feikens in *Kleban v. Hygrade Food Prod. Corp.*, 102 LRRM 2773, then the appropriateness of summary judgment would be even more clear.

Thus, inasmuch as there is no genuine issue of a material fact as to mere negligence by the Union in processing the grievance, and that there is no genuine issue of a material fact in processing the grievance by the Union with the kind of negligence that would amount to a deprivation of contract rights, the Court is of the belief that there is no genuine issue of material fact as to the Union acting arbitrarily with respect to the Plaintiff's grievance.

In view of the foregoing, the Court need not address the contention of the Union that the Plaintiff did not exhaust his intra-union remedies by seeking rehearing with the Executive Board, or pursuing his international constitutional remedies. It should be pointed out, however, that, with respect to such a requirement, I am in complete agreement with Judge Churchill that the nature, existence and procedures for exercise of such remedies must be reasonably clear and accessible to the member to es-cape from being characterized as illusory. *Robinson v. Marsh Plating Corp.*, 443 F.Supp. 811, 815 (E.D.Mich.1978) (Churchill, J.).

The Motion for Summary Judgment is granted.