See also, D.C., 507 F.Supp. 1064.

**Ray WELCH et al., Plaintiffs,**

v.

**The MASON AND DIXON LINES, INC. et al., Defendants.**

**No. CIV–2–77–91.**

United States District Court, E. D. Tennessee, Northeastern Division.

March 4, 1980.

C. Berkeley Bell, Greeneville, Tenn., for plaintiffs.

James W. Bradford, Jr., Edwin O. Norris, and Charlton R. DeVault, Kingsport, Tenn.; C. William Baab, Dallas, Tex. and Cecil D. Branstetter, Nashville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for damages and equitable relief for the breach of a collective bargaining agreement and the breach of a union's duty of fair representation. 29 U.S.C. § 185(a). The plaintiffs are former employees of the defendant The Mason and Dixon Lines, Inc. (Mason and Dixon) who were laid-off by such employer in November and December, 1974 because of unfavorable economic conditions. When their respective layoffs extended for a period of 3 years, as the pertinent collective bargaining agreement provided, each plaintiff was terminated from his employment with Mason and Dixon. The plaintiffs (and 3 other members of their union) filed a grievance with their local union (the other defendant herein) in June, 1976, contending that their employer had breached the collective bargaining agreement. The union took such grievance to a multi-state grievance committee in Biloxi, Mississippi, which committee decided the same adversely to the contentions of the plaintiffs. The commencement of this action followed.

Pretermitting all other issues herein, a determination by the Court will be made of whether the plaintiffs met their burden of proving initially that their union breached its duty of fair representation; for, unless that has been established, their claims herein, as against both defendants, are barred by the finality provision of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.* (1976), 424 U.S. 554, 570–571, 96 S.Ct. 1048, 1059–1060, 47 L.Ed.2d 231, 245[10]. A breach of the union's duty of fair-representation has occurred in this instance only if the union's conduct toward the plaintiffs was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes* (1967), 386 U.S. 171, 190, 193, 87 S.Ct. 903, 918, 17 L.Ed.2d 842, 857[26], 859[32]; *Milstead v. International Bro. of Teamsters, Etc.*, C.A. 6th (1978), 580 F.2d 232, 235[1]. A showing of arbitrary conduct, or discrimination, or bad faith is enough; the plain-

tiffs were not required to have proved all three. *Ruzicka v. General Motors Corporation*, C.A. 6th (1975), 523 F.2d 306, 310[3], rehearing denied (1975), 528 F.2d 912. However, there must have been " * * * 'substantial evidence of fraud, deceitful action or dishonest conduct.' * * * " *Motor Coach Employees v. Lockridge* (1971), 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473, 490[18], rehearing denied (1971), 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120.

█ In this circuit, the obligation of a union to represent fairly its members is threefold:

*     *     *     *     *     *

"A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for [a] civil action."

*     *     *     *     *     *

*Ruzicka v. General Motors Corporation, supra*, 523 F.2d at 309–310, quoting from *Griffin v. International Union of United Automobile Workers*, C.A. 4th (1974), 469 F.2d 181, 183. Under the doctrine of fair-representation, a union must represent fairly the interests of all its members. *Electric Workers v. Foust* (1979), 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698, 704[4]. " * * * In particular, a union breaches its duty when its conduct is 'arbitrary, discriminatory or in bad faith,' as, for example, when it 'arbitrarily ignore[s] a meritorious grievance or process[es] it in a perfunctory fashion.' * * * " *Idem.*, quoting from *Vaca v. Sipes, supra*, 386 U.S. at 190, 191, 87 S.Ct. at 917. In some instances, it is necessary for a plaintiff to have shown only that the union has processed a grievance in a perfunctory fashion, *Milstead v. Interna-*

*tional Bro. of Teamsters, Etc., supra*, 580 F.2d at 235[1]; however, in each case " * * * [t]he decisive question is whether the union's conduct is 'arbitrary, discriminatory, or in bad faith.' * * * " *St. Clair v. Local U. No. 515 of Int. Bro. of Teamsters, Etc.*, C.A. 6th (1969), 422 F.2d 128, 130[1].

The plaintiffs complain that they received no notice of the dates of the hearing by the committee of their grievance and were thus deprived of the opportunity to appear thereat. It was the standard procedure of the union not to notify a grievant of the date his grievance would be heard before the multi-state grievance committee unless the grievant had requested such notification. Where a grievance involved seniority, notice of the hearing was posted ordinarily in the union hall; however, this was for the benefit of employees whose seniority might be affected by the decision and was not intended to constitute notice to a grievant. In a prior grievance proceeding, the plaintiff Mr. Welch requested in writing that he be notified of the hearing, and he was so notified. No such request was made in this instance, and consequently, no notice was given to the plaintiffs.

█ While it might have been better practice for the union, as a matter of courtesy, to have informed a grievant when his grievance would be heard, the Court FINDS that any such deficiency herein was harmless. In the several years that Mr. Ed Matney (the union's business agent), had been handling grievances before the multi-state committee, only one grievant had ever attended such a hearing. None of the plaintiffs testified that he would have attended the hearing herein had he received notice thereof,[1] and there is no suggestion that such notification or attendance might have affected the final outcome. As Mr. Welch testified: " * * * That was why we had a business agent." (Tr., p. 74). " * * * The Union may have acted negligently or exercised poor judgment in failing to keep [the plaintiffs] informed of the status of [their] grievance, but this is not sufficient

---

1. None of the plaintiffs had attended previously the hearing of any other grievance.

to support a claim of unfair representation. * * * " *Whitten v. Anchor Motor Freight, Inc.,* C.A. 6th (1975), 521 F.2d 1335, 1341[12], certiorari denied (1976), 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807.

█ It is the further contention of the plaintiffs that hostility between Mr. Welch and the president of the local union, Mr. Howard G. Tennyson, resulted in a failure by the union to adequately pursue their grievance. Such an allegation compels the Court " * * * to examine the record with particular care * * * " to insure that the union's conduct was not wrongful. *Whitten v. Anchor Motor Freight, Inc., supra,* 521 F.2d at 1341. Having done so, the Court hereby FINDS that the animosity between Mr. Welch and Mr. Tennyson played no part in the union's handling of the grievance involved herein.

Commencing in the summer of 1972, hostility developed between Messrs. Welch and Tennyson. They engaged in heated arguments on several occasions. At times they apparently came close to exchanging blows—or worse.[2] Nevertheless, despite the difficulties between these two men, the union continued to process the several grievances filed by Mr. Welch and to represent him in the grievance proceedings very successfully. On 3 separate occasions Mr. Welch was discharged from his employment; however, each time the union's representation of him resulted in his reinstatement. Mr. Tennyson handled two of these successful grievances.

In 1973 Mr. Welch engaged in an illegal wildcat strike and set up a one-person picket-line in front of his employer's place of business. Mr. Tennyson strongly urged Mr. Welch to cease and desist, and, according to Mr. Welch, threatened to get him fired and to refuse to process any resulting discharge grievance which he might file.[3] As a consequence of his conduct Mr. Welch was discharged. He filed a grievance which was processed by the union, resulting in his reinstatement. The Court finds nothing in this record indicating that the hostility which existed between Messrs. Welch and Tennyson affected in any manner the union's handling of the numerous grievances of Mr. Welch. The animosity was between Mr. Welch and Mr. Tennyson and not between Mr. Welch and his union.

█ It is claimed also by the plaintiffs that their union failed to adequately investigate their grievance and to properly prepare for the hearing before the multi-state grievance committee. The Court FINDS this not to have been the case.

The defendant union, through Mr. Matney, made, in good faith, the determination that the grievance of the plaintiffs involved only " * * * a contractual interpretation that had to be made." Accordingly, no investigation of the surrounding facts was made and no statements were obtained from any "witnesses." The Court thinks that this determination was inescapable and correct.

Unlike other grievances, including some filed previously by some of the plaintiffs, the instant one involved only a question the proper interpretation of a contract. All of the pertinent facts were known and undisputed. Mr. Matney, who had a great deal of experience in handling grievances before

---

2. Mr. Welch described one such incident thusly:

> "I told Mr. Tennyson that he had threatened to shoot me, to put a bullet between my eyes, and to either put it there or pass yellow.
> "He ran his hand down in his pocket and said he covered the ground he stood on, and I told him he would cover the ground he sprawled on if he come [sic] out of that pocket with his hand." (Transcript, p. 63).

3. Under the collective bargaining agreement, Article 8, § 2(a), the union, in the event of an unauthorized work stoppage or picket line, was required to " * * * immediately make every effort to persuade the employees to commence the full performance of their duties and [to] immediately inform the employees that the work stoppage and/or picket line is unauthorized and in violation of [the collective bargaining agreement]. * * * " Furthermore, that section provided that, if the employer disciplined or discharged an employee for his participation in any such unauthorized activity, such employee would " * * * not be entitled to or have any recourse to the grievance procedure. * * * "

the committee, felt that he had all the information necessary for a proper presentation of the grievance. The plaintiffs have failed to point-to anything else that the union might have acquired and presented in support of their grievance. As was testified by Mr. Welch, "I had given them everything I knew * * *."

■ The plaintiffs contend also that there existed a concerted plan (or perhaps a conspiracy) by the union and Mason and Dixon to rid themselves of Mr. Welch and that the union's handling of his grievance was used to accomplish this goal. While Mr. Welch had been somewhat of a "trouble-maker" during his tenure at Mason and Dixon, perhaps giving both his union and his employer cause to wishing he would "move on",[4] the Court FINDS the evidence herein insufficient to support this contention of the plaintiffs.

There is no evidence in this record that, in its handling of the plaintiffs' grievance the union acted in a discriminatory manner. Nothing here suggests that the union processed this grievance any differently than it processed the comparable grievances of other members. In fact, a grievance filed by Mr. Frank Castle, subsequent to that of the plaintiffs but identical thereto, was handled in exactly the same manner as that of the plaintiffs. Conclusory allegations of discrimination are insufficient; rather, " * * * an affirmative showing by [the] plaintiff[s] that the Union's action or inaction was motivated by bad faith is required. * * * " *Whitten v. Anchor Motor Freight, Inc., supra,* 521 F.2d at 1341[9]. There is no evidence herein of bad faith on the part of the union in its handling of the plaintiffs' grievance.

Somewhat troublesome to the Court, however, is whether the union's handling of the plaintiffs' grievance before the multistate grievance committee was arbitrary or perfunctory.[5] As Mr. Matney began the presentation of the grievance to that committee, he was interrupted by the company-representative Mr. Skaggs who contended that the grievance was "improper". Mr. Skaggs' argument was that this grievance involved substantially the same issues that had been decided previously by the committee (in favor of the company) in a grievance filed by Mr. Orie Hickman (the Hickman grievance), and that, under the committee's rule of *stare decisis,* any consideration of the plaintiffs' grievance was barred procedurally.

As was the standard procedure, the committee asked Mr. Matney to respond to this contention. Mr. Matney had made, in good faith, the determination on behalf of the union that the Welch and Hickman grievances involved substantially the same issues, and he honestly so told the committee. Nevertheless, Mr. Matney " * * * asked the [c]ommittee to hear this grievance on its own merit because those peoples' [that is, the plaintiffs'] jobs were hanging in jeopardy because of it." Never did Mr. Matney agree with the company that the grievance was "improper"; he merely told the truth when asked whether he felt it involved substantially the same issues as those decided in the Hickman grievance. Nonetheless, Mr. Matney urged that the committee hear and decide the plaintiffs' grievance on its own merits. The committee declined to follow this suggestion and ruled in executive session that the grievance was "improper."[6]

The crux of the present matter appears to be the determination by Mr. Matney,

---

4. Even so, both Messrs. Tennyson and Matney had pressed Mason and Dixon officials on numerous occasions as to when they were going to put the plaintiffs back to work.

5. Reconstructing exactly what occurred at the hearing before the multi-state grievance committee is made more difficult by the fact that, due to a malfunction in the recording equipment, a transcript was not available. There is

neither suggestion nor evidence indicating that such malfunction was other than genuine.

6. It was the procedure of the committee to determine first whether a grievance was procedurally "proper" or "improper" when such a question was raised. A grievance which was determined to be "improper" was not considered thereafter on its merits.

acting for the union, that the Hickman grievance " * * * was substantially similar to [the grievance in] the Welch case * * *." This is the only "fault" which the Court is able to discern which might be charged to the union in its handling of the plaintiffs' grievance herein. This Court does not sit merely to review or "second-guess" this determination of Mr. Matney; rather, the Court is limited to a consideration of whether Mr. Matney's conduct was arbitrary or perfunctory within the meaning of *Vaca v. Sipes, supra,* and its progeny.

The situation herein appears somewhat akin to that wherein a union determines that a particular grievance lacks merit and thus refuses to process it to a determination on its merits. Here, the union did not decide that the plaintiffs' grievance lacked merit, but in fact made the decision to take the grievance before the multi-state grievance committee for a resolution on the merits. Even after the procedural issue was raised, the union sought a decision of the grievance on its merits. Nevertheless, Mr. Matney's honest and good-faith agreement with the company representative, that this grievance was substantially similar to the Hickman grievance decision, undoubtedly influenced the committee to rule the grievance "improper," thus resulting in no decision on the merits.

The decision of the Supreme Court in *Vaca v. Sipes, supra,* affords unions broad discretion in handling grievances filed by their membership. *Electrical Workers v. Foust, supra,* 442 U.S. at 51, 99 S.Ct. at 2127, 60 L.Ed.2d at 706. The Court in the latter adjudication " * * * stressed that union discretion is essential to the proper functioning of the collective-bargaining system. Union supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union. [Citations omitted.] Without these screening and settlement procedures, the Court found that the costs of private dispute resolution could ultimately render the system impracticable. * * *" *Ibid.,* 442 U.S. at 51, 99 S.Ct. at 2127, 60 L.Ed.2d at 706–707.

While Mr. Matney's determination regarding the plaintiffs' grievance may have been erroneous, that does not amount to unfair representation. " * * * The grievance processes cannot be expected to be error-free. The finality provision [of the collective bargaining agreement] had sufficient force to surmount occasional instances of mistake. * * *" *Hines v. Anchor Motor Freight, Inc., supra,* 424 U.S. at 571, 96 S.Ct. at 1059, 47 L.Ed.2d at 245[11].

■ The fact that the personnel of the union may have acted negligently or exercised poor judgment in this regard is not enough to support a claim of unfair representation. *Dill v. Greyhound Corporation,* C.A. 6th (1970), 435 F.2d 231, 238, certiorari denied (1971), 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122. " * * * Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. * * * To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes." *Humphrey v. Moore* (1964), 375 U.S. 335, 349–350, 84 S.Ct. 363, 372, 11 L.Ed.2d 370, 382, rehearing denied (1964), 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655.

■ A union has the authority, acting in the collective interest of its membership, to agree in good faith with the position taken by an employer, even 'though such may be contrary to the interests of some members of the union, including the grievant. *Balowski v. International U., United A., A. & A. Imp. Wkrs.,* C.A. 6th (1967), 372 F.2d 829, 834[6]; *Hildreth v. Union News Company,* C.A. 6th (1963), 315 F.2d 548, 551, certiorari denied (1963), 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59. " * * * A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. * * *" *Ford Motor Company v. Huffman* (1953), 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed.2d 1048, 1058 (headnote 6). The Court does not think that, in this instance, the defendant union abused its discretion.

This is not a situation in which the union failed to make any decision as to the merits of the grievance but merely allowed it to expire out of negligent and perfunctory handling. *Cf. Ruzicka v. General Motors Corporation, supra.* Nothing in this record approaches the wanton disregard and gross negligence exhibited by the union in *Ruzicka, supra.* The holding in that case was limited " * * * to a narrow range of cases in which unexplained union inaction, amounting to arbitrary treatment, has barred an employee from access to an established union-management apparatus for resolving grievances. * * * " *Ibid.,* 528 F.2d at 913. Here, the union took the plaintiffs' grievance to the grievance committee and sought a decision thereof on the merits.

This Court is unable to find on the record before it any conduct of the defendant union herein that was arbitrary or perfunctory within the meaning of *Vaca v. Sipes, supra,* and the decisions applying and interpreting it.

In order to prevail herein, the plaintiffs had the heavy burden of demonstrating initially that wrongful conduct on behalf of their union in its handling of their grievance tainted the grievance procedure so as to permit this Court to look behind the finality provision of the collective bargaining agreement. The plaintiffs recognized this hurdle and tried diligently to surmount it. They were unable to so do.

The Court hereby FINDS that the conduct of the defendant union was neither arbitrary, discriminatory, nor in bad faith. Accordingly, the Court hereby CONCLUDES that such defendant did not breach its duty of fair representation. It is the resulting decision of the Court that the plaintiffs hereby are DENIED all relief herein. Judgment will so enter. Rule 58(1), Federal Rules of Civil Procedure.