Mark K. SEELEY, Plaintiff,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

No. 79–40146.

United States District Court,
E. D. Michigan, S. D.

Nov. 17, 1981.

James Buckley, Flint, Mich., for plaintiff.

Daniel G. Galant, Kathy Ganger, Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

I  FACTS

This action arose out of the discharge of plaintiff, Mark Seeley, from an employment position with defendant General Motors Corporation.  This discharge occurred after Mr. Seeley had spent approximately two months on the job.

The discharge was triggered by events that occurred on July 19—July 20, 1976.  By his own admission, plaintiff smoked four joints of marijuana and consumed two alcoholic drinks on the evening of July 19, 1976.  Upon arriving at work the next morning, plaintiff was "invited" to speak to his foreman, one Billy Richey.  After a brief conversation, Mr. Richey escorted plaintiff to the first aid station, where plaintiff was asked to give a urine sample.  At this time, plaintiff requested the presence of a union committeeman.  In response, Mr. Richey

put a call in his call book for plaintiff's committeeman.

Shortly thereafter, plaintiff was sent to the plant hospital. Mr. Richey arrived at the hospital a short time later. Richey then informed plaintiff that plaintiff was discharged as an unsatisfactory temporary employee. Mr. Richey read a statement to plaintiff that purported to indicate that plaintiff's discharge was caused by his reporting to work in an intoxicated condition.

Plaintiff waited an additional half hour in the hope of speaking with his committeeman. The committeeman failed to arrive, however, and plaintiff proceeded to the Union hall. There, plaintiff encountered the president of UAW Local 599, one Al Christner. Christner then advised plaintiff to seek help at a drug abuse program. It is not clear what Christner said to plaintiff with respect to filing a grievance.

In any event, plaintiff did not file his grievance until December of 1976. At the third step of the grievance procedure, the International Union became involved. By the fourth step, the International withdrew the grievance because of a belief that there was little chance of success. This belief apparently was due to the fact that the grievance had not been timely filed.

Plaintiff has brought a section 301 action against the Local, the International and the company. Plaintiff alleges that the company breached the collective bargaining agreement. In addition, plaintiff contends that the two Unions breached the duty of fair representation. The Unions—the Local and the International—have moved for summary judgment. The company has also moved for summary judgment. These motions will now be considered by this Court.

## II   LEGAL ANALYSIS

■   In the instant case—like all section 301, duty of fair representation cases—it is important at the onset to hearken to the *Vaca v. Sipes* doctrine. In *Vaca*, the Supreme Court held that an employee suing an employer and union under section 301 must first allege and prove that the union has breached its duty of fair representation. 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). If the employee cannot carry this burden, there is no section 301 cause of action.

■   Thus, the duty of fair representation issue is critical in this case. If the motions for summary judgment are granted with respect to this issue, the case will be dismissed. The duty itself consists of three distinct aspects: A union breaches the duty if its conduct toward a union member is arbitrary, discriminatory or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

In the instant case, it is conceded that the union did not act in a bad faith or discriminatory manner. Plaintiff bases his claim on the theory that the union's conduct was arbitrary, and thus violative of the duty of fair representation. Plaintiff focuses on two separate instances as proof of this arbitrary treatment:

First, plaintiff alleges that it was arbitrary for the union not to provide a committeeman at the two interviews that occurred in Mr. Richey's office and at the first aid center. Plaintiff points out that he requested the presence of the committeeman, a privilege guaranteed to plaintiff under the collective bargaining agreement. And despite the fact that Mr. Richey did put a call in the call book in an attempt to locate the committeeman, plaintiff was discharged and remained waiting for a half hour after the discharge, and still the committeeman never showed up.

Plaintiff's second factual basis for his arbitrary treatment claim centers around the conduct of Local 599 president Albert Christner. Plaintiff points out that Mr. Christner indicated that he should not file a grievance with respect to his discharge, but instead should participate in the SODAT drug abuse program. Due to Mr. Christner's advice, plaintiff alleges that he decided against filing a timely grievance. Thus, when plaintiff later tried to pursue his grievance, the Union informed him that he was time barred.

■ Turning now to the law that defines the term "arbitrariness" under the *Vaca* standard, courts agree that a union may be arbitrary and still be acting in good faith. *See Ruzicka v. GMC*, 523 F.2d 306, 310 (CA 6, 1975); *Griffin v. UAW*, 81 LRRM 2485 (CA 4, 1972). But we also note that the arbitrariness decisions do tend to group around a discernible point on the continuum of fault and that this "point" is somewhere between negligence and gross negligence—but closer to gross negligence than to negligence. An examination of two important cases would seem to confirm this. In the famous case of *Ruzicka v. GMC* above, the union, after being granted two extensions of time, failed to file a grievance statement with the company official, and thus cost plaintiff the opportunity to proceed to arbitration. In the Eighth Circuit case of *Ethier v. Postal Service*, however, the union was only one day late in filing a grievance. The Fourth Circuit held that the Union's conduct was not arbitrary. *See Ethier v. Postal Service*, 590 F.2d 733 (CA 8, 1979).

The union's conduct in *Ruzicka* bordered on gross negligence, while in *Ethier*, the union's conduct was nothing more than negligent. Similarly, in *Griffin v. UAW*, 81 LRRM 2485 (CA 4, 1972), the union filed a discharged employee's grievance with a warehouse operation's manager who was a bitter enemy of the grieving employee. In fact, the grievant's discharge was due to the fact that he had physically assaulted this very warehouse operation's manager. Obviously, this was not conducive to fair arbitration procedure, and it appears was close to gross negligence for the union not to realize this. The Fourth Circuit found that the Union had indeed breached its duty of fair representation.

■ On the other hand, the Fifth Circuit case of *Coe v. Rubber Workers*, 571 F.2d 1349 (CA 5, 1978), stands for the rule that mere negligence is not tantamount to arbitrariness under the *Vaca v. Sipes* standard. In *Coe*, the union mislabeled an employee's grievance number. As a result of this mistake, the employee was time barred from pursuing his grievance. The Fifth Circuit

held that the Union had not engaged in arbitrary conduct.

The cases often use terms such as "perfunctory" or "indifferent" to describe the type of conduct that amounts to arbitrariness under *Vaca*. Here, we resist such labels in favor of approximating the point on the fault continuum that roughly corresponds with the "arbitrariness" coordinate. As we have said, this point roughly approaches what is known in tort and criminal law as gross negligence.

■ With this in mind, plaintiff's theory that the absence of the committeeman was arbitrary must be rejected. The company had placed a call in the call book for the committeeman. Nevertheless, the committeeman did not arrive. It is not altogether clear as to how much time elapsed between the entry in the call book and plaintiff's departure from the plant hospital. It would seem, however, that the time span was less than one and one half hours. It is now held that this delay, in and of itself, is not "arbitrary" under the *Vaca* standard as it has been interpreted above.

As a general premise, the committeeman delay was not "close to gross negligence." Moreover, the delay is much less severe than the failure to file in *Ruzicka* or the hostile grievance assignment in *Griffin*. In addition, in *Ruzicka* and perhaps in *Griffin*, the Union's mistake *caused* the employee to lose a tangible benefit—i. e., his right to proceed in arbitration. In the instant case, the absence of the committeeman does not appear to have caused the plaintiff to lose any real benefit. The lack of causation is another factor that cuts against the arbitrariness finding.

■ Rejected also is the theory that Mr. Christner's conduct was arbitrary under the standards. We note that there is conflict with respect to what Mr. Christner actually told plaintiff regarding the grievance procedure. On deposition, plaintiff indicated that Christner merely did not tell him about the possibility of filing a grievance. (p 121.) But in plaintiff's brief in opposition to the motion for summary judgment, we

are told that Christner advised plaintiff *not to file* a grievance. (p 19.) Assuming arguendo that the brief's version is correct, the *Vaca* arbitrariness standard still was not breached. Christner knew that plaintiff was a mere temporary employee. Consequently, it was not unreasonable to believe that plaintiff would have little chance of prevailing in a grievance proceeding. In light of this, the advice to enter the drug abuse program was perfectly reasonable.

Mr. Christner's conduct was probably not even negligent. And since we have already indicated that the committeeman/union conduct was not arbitrary, it is clear that Local 599 did not breach its duty of fair representation. Nevertheless, we note that plaintiff has brought suit against the International Union as well as Local 599. And since it is well established that each union is individually responsible for its own conduct, we must also consider whether the International breached its duty of fair representation.

■ It is quite clear that the International, like the Local, did not breach its duty. The International did nothing more than withdraw plaintiff's grievance because the grievance was time barred. In this situation, the International had the authority to decide whether it was worth the effort to continue appealing plaintiff's grievance. That the International decided not to continue the appeal certainly does not amount to a breach of the *Vaca* standards. *See Whitten v. Anchor Motor Freight*, 521 F.2d 1335 (CA 6, 1975); *Lewis v. Magna American Corp.*, 472 F.2d 560 (CA 6, 1972); *Icing v. Space Carriers*, 102 LRRM 2590 (CA 8, 1979); *Fountain v. Safeway Stores*, 555 F.2d 753 (CA 9, 1977).

■ Thus, this Court finds that neither the Local nor the International breached its duty of fair representation. And as was noted earlier, under the *Vaca* doctrine, a section 301 action against the union and the employer must be dismissed *in toto* if there is no breach of the duty of fair representation. The parties nevertheless briefed a number of issues in addition to the duty of fair representation. These include exhaustion of contractual remedies; exhaustion of intra-union remedies; effect of the state statute of limitations and federal preemption. It was, however, not necessary for the court to delve into these issues for the entire section 301 action fails absent a breach of the duty of fair representation. Since it has been concluded that neither the Local nor the International breached the duty of fair representation in the instant case, the defendants' motions for summary judgment must be granted. This case is hereby DISMISSED with prejudice.

IT IS SO ORDERED.