Helen THACKER and Loraine Poynter, on their behalf and on the behalf of all persons employed in the pants shop of the Palm Beach Company, in Knoxville, Tennessee, as of June 1, 1977

v.

The PALM BEACH COMPANY and TEH Amalgamated Clothing Workers of America.

Civ.No. 3–77–387.

United States District Court, E. D. Tennessee, N. D.

Jan. 6, 1978.

Willis Jackson, Jr., Knoxville, Tenn., for plaintiff.

George E. Barrett (Amalgamated), Nashville, Tenn., Arthur G. Seymour (Palm Beach), Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was removed to this Court from the Knox County Chancery Court by petition of both defendants on October 24, 1977. Defendants assert federal question jurisdiction in that this suit is an action to enforce a collective bargaining agreement under 29 U.S.C. § 185. The plaintiffs claim that the defendant, Palm Beach Company (the Company), has violated a collective bargaining agreement which it entered into with the other defendant, Amalgamated Clothing and Textile Workers Union of America (the Union). In addition, plaintiffs claim that the Union has failed to represent them fairly and that it fraudulently induced their ratification of the most recent collective bargaining agreement. Finally, plaintiffs contend that the rehiring procedure used by the Union and the Company violated their seniority rights. Several motions are pending before the Court and oral argument on these motions was recently heard.

### Preliminary Matters

Plaintiffs have moved to amend their complaint so as to allege attempts to pursue grievance procedures under the contract. While this allegation is made only after defendants moved to dismiss based on the absence of the same, the request to amend is granted.

Plaintiffs also attempt to bring this action as a class action. In view of the completely different circumstances in which each plaintiff was rehired after the closing of the pants shop, it is the opinion of the Court that a class action is improper, and leaves this action with only two plaintiffs, Helen Thacker and Loraine Poynter.

### Claims Under the 1974 Contract

The two plaintiffs were formerly employed in the pants shop at the Knoxville plant of the Palm Beach Company, a suit manufacturing company, where they were members of and were represented by the Union. A collective bargaining agreement dated June 10, 1974, was in effect in 1976 when plaintiffs claim they first noticed that work designated for the Knoxville pants shop was being routed to company pants shops in other cities. This violated the 1974 contract in that such action failed to keep the Knoxville pants shop up to a specified level of production as provided in the 1974 agreement.

Plaintiffs have not disputed the affidavit of Betty Barber, the Business Agent of Local 90 of the Union, the plaintiffs' local. She states that in the spring of 1976 the shop steward in the pants shop complained to her about the work being shipped elsewhere. This dispute was pursued by the Union and arbitration demanded. Before the scheduled arbitration dates, the Union and the Company settled the dispute, and no further complaints or grievances over this matter were raised until May of 1977.

On May 26, 1977, only a week before the scheduled expiration date of the 1974 contract, Ms. Barber was again contacted by the shop steward in the pants shop about work being shipped out. She notified Union officers in New York who made a demand on the local company officials that they abide by the 1974 contract's provision concerning the pants shop. The Company complied with the Union's demand.

Based on these uncontested assertions in the affidavit and upon plaintiffs' acquiescence at oral argument, the Court grants defendants' motion[1] for summary judgment on the claims under the 1974 contract.

### Claims Under the 1977 Agreement

The present collective bargaining agreement between the Company and the Union

---

1. Defendant Union had filed a motion for dismissal or in the alternative for summary judgment. At oral argument, defendant Company asked that its motion to dismiss with attached affidavits be treated, in the alternative, as a summary judgment motion.

is dated June 1, 1977, and was formally ratified by Local 90 on June 6, 1977. This contract contains no provision guaranteeing the continued existence of the pants shop at the Knoxville plant. During the negotiations for the 1977 agreement, the Company informed the Union that pursuant to the report of a consulting firm hired under provision of the 1974 contract, the pants shop at Knoxville would be closed due to its unprofitable operation.

The Union then bargained for an expansion of the coat and vest shop and the rehiring in that department of the approximately 130 pants shop employees within a six-month period. This rehiring procedure was conducted by the Company and the Union so that all the employees laid off were rehired in the coat and vest shop, with the exception of five or six who turned down offers and one employee who died.

Both plaintiffs are currently employees in the coat and vest shop, although plaintiff Thacker is presently on a requested leave of absence. Due to their claim that the rehiring procedure violated their seniority rights, a brief summary of each plaintiff's rehiring follows.

Plaintiff Poynter was assigned to a job in the coat shop on July 6, 1977. She filed a grievance on July 18 requesting a different job, claiming she couldn't stand on her feet. Her initial grievance was refused, due to the policy to try to rehire as many of the former pants shop employees as possible before allowing job transfers. She filed a second grievance on the same issue on July 26. Plaintiff Poynter asked for leave of absence on September 23, 1977, and returned to work on November 7, 1977. Plaintiffs do not dispute that on November 14, 1977, she was transferred to a sitting job and is currently employed in that capacity.

Plaintiff Thacker was on leave of absence for a nasal operation when the pants shop closed on June 1, 1977. When she sought to return to work on June 13, she was told her job was phased out but she could be rehired in the coat shop soon. On June 21, 1977, she was given a job in the coat shop. During her first two and a half weeks on that job she was absent 7 days. She filed a grievance requesting a different job on July 25, 1977. Plaintiff does not deny that on August 15 she was granted a transfer to a job which was away from the high speed machine which she claimed created lint and aggravated her nasal condition. She worked two days at this job and took a leave of absence from approximately August 17 until October 3. On October 3, she worked for two hours and requested a leave of absence and has not returned to work. Defendant Company is advised that plaintiff Thacker is pursuing a workmen's compensation claim against it.

Plaintiff Thacker does not claim that her own seniority rights were violated, only that others were subject to such deprivation. In light of the Court's previous denial of a class action, only plaintiff Poynter has actually asserted a denial of seniority.

■ One problem with plaintiff Poynter's claim that the rehiring procedure violated her seniority rights under the contract is that the rehiring procedure itself was a bargained-for component of the very contract she contends it violated. Thus, the Court is of the opinion that no claim exists under the contract based on the rehiring procedure, at least where those claims are based on the assumption that the bargained-for process of rehiring, as contained in the contract, violated seniority rights of plaintiff Poynter.

However, there are some claims, by both plaintiffs, relating to the rehiring procedure which are based on a violation, albeit alleged, of the 1977 contract. Both parties agree that the document entitled "Understanding of June 3, 1977", (Exh. A to Poynter Affidavit of November 28, 1977) is a summary of the rehiring procedure agreed to in negotiations.

■ Plaintiffs' primary complaint concerns the chance to obtain second jobs when unsatisfied with the first. Neither plaintiff disputes the defendants' statements that plaintiffs' requests for job transfers were granted within one to three months. The

Court notes that the "understanding" specifies no certain time period for obtaining job transfers, and in light of the adjustment problems in placing over 100 people in new jobs, a one to three month period for obtaining job transfers does not seem unreasonable.

■ Furthermore, both defendants adamantly argue that no attempt has been made by either plaintiff to pursue this issue through the grievance procedure outlined in the contract. This is a basic prerequisite to suit in federal court to enforce such provisions. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

Plaintiffs have made general conclusory statements in their affidavits, that such attempts have been made but that the Union has ignored or refused to process them. The only specific written grievance which the plaintiffs assert was refused by the Union, is one signed by plaintiff Poynter and filed as an exhibit. (Exh. A to Poynter Affidavit of December 2, 1977). The Court notes that this grievance was initially presented to the Union representative over two months after the present action had been filed in state court. Furthermore, the Union does not deny that it refused that particular grievance, but contends that it contains objectional self-serving statements about what a union official allegedly said. In the Court's opinion, this one refusal is not a showing by plaintiff of the kind needed to establish futility. The Union contends that a properly drafted grievance would be promptly processed and no specific reference has been made to a specific written grievance, properly drafted, and concerning the matters at issue here, which was refused or ignored by the Union.

■ In light of the recent success of these plaintiffs in obtaining job transfers through the grievance procedures, and in light of the plaintiffs' failure to allege any specific grievance which was denied or refused, and considering other successes by these plaintiffs and their co-workers in the

past when seeking relief via the grievance procedure, the Court holds that plaintiffs have not exhausted their contractual remedies and that no showing has been made that use of such procedure would be futile. Thus plaintiffs' claims relating to the failure of the Union and Company to follow the negotiated contract must be pursued to exhaustion, under the contractual grievance procedure.

### Claims of Unfair Representation by the Union

■ Much of the original complaint in this action and a substantial portion of plaintiffs' counsel's argument before this Court are directed at the Union's alleged failure to fairly represent the plaintiffs. This duty has been described in the bellwether case of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), as a responsibility to represent Union members without engaging in actions which are "arbitrary, discriminatory, or in bad faith." *Id.* at 207, 87 S.Ct. at 925. This duty is applicable to all phases of collective bargaining, from handling of negotiations to the processing of grievances.

Plaintiffs have two particular claims against the Union still before the Court.[2] Plaintiffs claim that the Union's negotiations were conducted unfairly to them in that:

(1) the pants shop was closed;

(2) the rehiring process agreed to was contrary to their seniority rights; and

(3) the ratification vote itself was induced by misrepresentation.

■ Defendant Union argues that before plaintiffs can pursue their unfair representation claim in this Court, they must first exhaust internal union remedies or demonstrate that such remedies are inadequate or unavailable. The Sixth Circuit Court of Appeals has spoken on the efficacy of such a requirement:

"The requirement of exhaustion of intra-Union remedies is bottomed on the hope

**2.** One claim against the Union involving failure to pursue the loss of work at the pants shop under the 1974 contract has been discussed and ruled on earlier in this Memorandum.

that such procedures will quickly resolve disputes without the delay inherent in the judicial process and with the aid of persons experienced at resolving member-union conflicts short of a full-blown judicial proceeding."

*Ruzicka v. General Motors Corp.*, 523 F.2d 306, 312 (1975); *cf. Abood v. Detroit Board of Education*, 431 U.S. 209, 241–242, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)

The Union has presented affidavits of its officers who state that no such internal remedies have been initiated by these plaintiffs. Attached to these affidavits are the procedures contained in the International Union's Constitution for challenging actions of local representatives.

In response to this claim, plaintiffs have admitted that these procedures have not been exhausted (See p. 3 of plaintiffs' reply dated Dec. 8, 1977), but that the lack of exhaustion is due to the alleged failure of the local Union to pursue the grievances filed with it.

Plaintiffs have confused the grievance procedure (outlined in the Union-Company contract) with the *internal* Union remedies (contained in the Union constitution). Plaintiffs have not claimed that they have pursued these intra-union appeals nor have they attempted to show that such action would be futile. Therefore, these unfair representation claims against the Union must be dismissed for failure to initiate and exhaust available internal union remedies.

### Conclusion

For the foregoing reasons, it is ORDERED that the defendants' motions for summary judgment on the claims under the 1974 collective bargaining agreement be, and the same hereby are, granted. It is further ORDERED that the remaining claims be, and the same hereby are, dismissed.

Order Accordingly.