Aaron PITTS, Plaintiff,

v.

FRITO–LAY, INC., Bakery & Confectionery Workers' International Union of America, Detroit Bakers' Union Factory Local 326, Jointly and Severally, Defendants.

Civ. A. No. 77–72604.

United States District Court, E. D. Michigan, S. D.

Nov. 14, 1980.

Chui Karega, Glotta, Adelman, Dinges, Davis & Riley, P. C., Detroit, Mich., for plaintiff.

George M. Maurer, Jr., Maurer, Kalls, Long & Bunn, Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR INCLUSION OF FRINGE BENEFITS IN BACK PAY AWARD, GRANTING PLAINTIFF'S MOTION FOR INCLUSION OF STRIKE BENEFITS IN BACK PAY AWARD, AND ALLOCATING DAMAGES BETWEEN DEFENDANTS

PATRICIA J. BOYLE, District Judge.

Plaintiff in this matter prevailed on his breach of duty–of–fair–representation and

breach–of–contract claims against the respective Defendants when a jury found in his favor. By an order entered this day, Defendants' motions for new trial have been denied. Accordingly, it is necessary to resolve matters which, at trial, it was agreed would await post–trial briefing by the parties and resolution by the Court. Specifically, Plaintiff claims that he is entitled, as part of his damages award, to the amounts he would have received from the Union in strike benefits and the amounts the employer would have paid in fringe benefits on his behalf. Plaintiff states, and the Union does not contest, that strike benefits amount to Forty–Five Dollars ($45) per week [Thirty Dollars ($30) provided by the International Union, Fifteen Dollars ($15) provided by the Local Union] and, had Plaintiff still been employed, would have accrued for thirteen weeks. It was further stipulated between the employer and the Plaintiff that the cost of fringe benefits for Plaintiff amounts to 15 percent of the wage paid to Plaintiff.

Addressing, first, the question of the fringe benefits, it is to be noted at the outset that both Plaintiff and Defendant employer speak in terms of a "make whole" remedy but disagree as to what, in fact, will make Plaintiff whole. While the elements of the fringe benefits are not fully explained by either party, it is clear that pension contributions and insurance plan payments would be among such fringe benefits. The essence of Plaintiff's claim is that fringe benefits constitute an asset to Plaintiff and have been included in back pay awards by courts. Defendant employer, in its brief, stresses that Plaintiff has neither claimed nor demonstrated a tangible loss attributable to the cessation of his fringe benefits and, therefore, cannot claim that he has not been made whole by the back pay award alone.

The resolution of this issue certainly is not free from ambiguity. The treatment of back pay awards by the courts and by the National Labor Relations Board (NLRB) has varied from case to case and with the nature of the cause of action. The Court, in its research has not uncovered a breach of the duty–of–fair–representation case that addresses this issue, and the precedents supplied by the parties do not include a case directly on point. Plaintiff cites three cases for the proposition that the claimed fringe benefits should be included in the award. In *White v. King*, 319 F.Supp. 122, 127 (E.D.La.1970), the court acknowledged a demand for lost pension benefits but found the evidence insufficient to establish the value of the claim and, thus, rejected the claims. In *White*, then, no finding was made as to whether a person whose pension had not and would not have vested could recover pension contributions, that being a question of the value of the claim. *Coates v. National Cash Register*, 433 F.Supp. 655 (W.D.Va.1977), and *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir. 1974), were age discrimination, *see* 29 U.S.C. § 621 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*, cases respectively. The language from *Pettway* cited by Plaintiff does not fully support his contention that wholesale inclusion of fringe benefit expenditures in a back pay award is proper. In *Pettway* the court approved inclusion of what I would characterize as tangible economic fringe benefits, such as overtime pay, shift differentials, and vacation and sick pay. Retroactive pension contributions are mentioned, and the district court, on remand, was directed to consider pension adjustments "for members of the class who retired during this time." *Id.* at 263. In other words, *Pettway* is properly read as an indication that back wage computations should include actual losses; a hypothetical loss, for example, to a plaintiff who did not suffer an actual loss of pension rights, is not considered in *Pettway*.

Defendant Frito–Lay's position is carefully reasoned but is not supported by citations to precedent. The only citation in Defendant's brief is to a National Labor Relations Board decision, *Sioux Fall Stockyard Co.*, 236 NLRB 543, 99 LRRM 1316 (1978), which, upon review by the Court, is found not to support the argument of Defendant. It must be acknowledged that the Court reviewed only the LRRM version of

that decision and, therefore, conceivably was not afforded the benefit of the entire text. However, that portion which is reported and which is apparently relevant to the instant discussion states:

> Back pay specification properly included amount of health and medical insurance premiums that employer would have paid on claimants' behalf had it reinstated them following unfair labor practice strike; employer is obligated also to make retroactive life insurance payments to claimants for that part of back pay period during which they were financially liable to union for life insurance protection.

*Id.* at 1317. This passage can be read to support Plaintiff's position insofar as the NLRB seems to have ordered inclusion of health and medical insurance premiums generally but to support Defendant's position to the extent that it allows recovery only of life insurance premiums for which the dischargees assumed a liability to the union. Without further explication of the underlying facts, it is not possible to ascertain the rationale by which the Board reached its decision, and it is necessary to look elsewhere for meaningful guidance on these issues.

By way of further development of the issue, I note that so far Plaintiff's position is supported by back pay awards formulated in Title VII and ADEA cases, and, to the extent that NLRB decisions, dealing with back pay, measure damages more conservatively, I am inclined to follow the NLRB decisions since the fair representation case is essentially a matter of traditional labor law governed by concerns for federal labor policy. *See International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 2128, 60 L.Ed.2d 698 (1979). In *Sugarman Aggregates, Inc.*, 198 NLRB No. 78, 81 LRRM 1025, 1026–27 (1972), the Board approved liability of the employer for medical payments incurred and paid by the employees who were wrongfully without employment and its attendant insurance coverage. The Board rejected the employer's contention that it could be held responsible only for the amount of the insurance premiums since the Board apparently disagreed with the premise that the employees should have obtained private insurance which would have mitigated the health care liability to the employer. Likewise, in *Bowen Transports, Inc.*, 196 NLRB 665, 80 LRRM 1783, 1785 (1972), the Board ruled that wrongfully laid–off employees were entitled to compensation for incurred medical expenses which would have been covered by insurance had the employee been working. *See also Golay & Co., Inc.*, 184 NLRB 241, 76 LRRM 1110, 1113 (1970). *But see Delorean Cadillac, Inc.*, 231 NLRB No. 62, 96 LRRM 1347 (1977); *cf. J/B Industries, Inc.*, 245 NLRB No. 78, 102 LRRM 1500 (1979) (overtime compensation included without evidence that overtime would have been worked). Furthermore, at least one court has specifically approved inclusion in damage awards of "amounts compensating strikers for money they had to expend on interim insurance coverage due to the Company's improper recalcitrance in making reinstatement offers." *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1312–13, n.9 (D.C.Cir.1972).

■ I am persuaded that the better approach to evaluation of fringe benefits as elements of damages is to look to the economic loss sustained by the mistreated employee. This is in keeping with the policy of offering a "make whole" remedy and avoiding punitive damages. *International Brotherhood of Electrical Workers v. Foust, supra.* Moreover, it fits logically into a scheme by which an employer would be liable, for example, to compensate a wrongfully discharged employee for high medical expenses incurred while without work and without private insurance. Were the Court to permit this Plaintiff to prevail on his contention that there is a *per se* obligation to pay the premiums of such insurance to the Plaintiff as part of a back pay award, the argument could more readily be made in a subsequent case that the full extent of the employer's liability is for premiums, and the employee assumes the burden of obtaining private insurance coverage when not actually employed. *See, e. g., Sugarman*

*Aggregates, Inc., supra.* Such a burden would be an unreasonable one to impose on the employee who likely is without the wherewithal during the period of involuntary employment to subsidize medical insurance; the concept of a remedy that fully compensates the employee would seem to demand that payment of the medical expenses be assumed by the employer. The other side of the case just hypothesized is presented by the facts of the case at bar. Here, the Plaintiff identifies no area in which he suffered economic injury by the loss of fringe benefits but rather contends a general right to recover them.

While it might be submitted that the employer is, in effect, reaping a benefit from the discharge since it has avoided payments in the amount of the fringe benefits and thereby has not been forced to pay out all that would have been spent had the employee been properly retained as an employee during the period in question, it is not correct to conclude that the ruling the Court reaches will undermine the deterrent effect of compensatory damages. There is no way to know, when making a personnel decision, whether the employee will suffer injury during the employment hiatus and might, under the rationale here developed, thereby create a great liability for the employer.

Accordingly, Plaintiff will be permitted to recover only those damages actually suffered, not hypothetical deprivations. In concluding on this issue, it might be noted that the dicta in this ruling amounts to a creation of insurance protection for the improperly discharged or laid off employee— the guilty employer becomes the insurer. Thus, to the extent that the plaintiff might contend that he forfeited the security of insurance protection afforded under his employment contract, he can find some solace in the observation that, so long as he is confident he will be vindicated, he will also, under the theory here advanced, be compensated for actual economic loss suffered as a result of his wrongful treatment by the employer and/or union.

It is therefore concluded, on the basis of the rationale just recited, that Plaintiff's motion for inclusion of fringe benefits in the damage award must be, and hereby is, DENIED.

■ Turning now to the question of strike benefits that Plaintiff claims he would have received had he not been wrongfully discharged, I state, first, that the Court, despite the passage of months since this trial and the fact that it was clearly agreed that post–trial briefs would be accepted, has not been briefed by the Union on this question. Having thus acknowledged the fact that the Court is operating without the benefit of further explication of its position by the Defendant Union, I believe that the rationale developed above suggests the resolution of the question of strike benefits. In contrast with the fringe benefit claim of Plaintiff, that for strike benefits presents a finite economic loss. In keeping with the logic of the approach I have developed, Plaintiff is entitled to recover a total of Five Hundred Eighty–Five Dollars ($585), the amount of the strike benefits Plaintiff would have received had he remained in his rightful position of employment.

■ With respect, now, to the allocation of damages between the employer and the union, I am mindful, initially, of the Supreme Court's observation on this subject in *Vaca v. Sipes*, 386 U.S. 171, 197, 198, 87 S.Ct. 903, 920, 921, 17 L.Ed.2d 842 (1967), where it was said,

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

But apportionment of damages is not a simple undertaking. Though the Defendants have not chosen to urge their respective positions on the Court by way of post–trial briefing, it is probable that, given the

prospect of an award to the Plaintiff, they would differ as to which should bear the portion of the award. Even if differing positions were formally adopted and argued, I would and do choose to be guided by the pragmatic approach to the question taken by the Honorable John Feikens, of this bench, in *Ruzicka v. General Motors Corp.*, 96 LRRM 2837 (E.D.Mich.1977). There, following remand from the Court of Appeals, 523 F.2d 306 (6th Cir. 1975), and after trial resulting in favor of Plaintiff, the Court considered the competing arguments of the union and employer on the question of allocation of liability and rejected both positions. Instead, the court made the following ruling:

> The Court, after due consideration, must reject both of these positions as a guide to apportioning plaintiff's damages in this case. The formulae offered by both defendants, while plausible and apparently supported in the cases, are nevertheless based almost wholly on the sequence or timing of their respective wrongful acts toward plaintiff. This is myopic. It was the combined effect of General Motors [sic] wrongful discharge and the Union's breach of duty of fair representation which has operated all of these years to deprive plaintiff of his job with the Company and his rights under the contract, and the Court is not about to apportion damages by trying to determine which tooth of this buzz saw was responsible, at any given moment, for the damages plaintiff was incurring at the time. The Court believes that a proper apportionment of damages must consider not only the chronology of the defendants' wrongful acts but also the gravity and nature of their wrongdoing. Each defendant contributed in its own way to the injuries suffered by plaintiff, and each must answer in damages accordingly.

> Since both the Union and the Company caused this damage each must bear one-half of the total post-judgment interest. Plaintiff may have a judgment against both defendants for back pay of $23,674.01. Each defendant is directed to repay the welfare fund [of the state] $800 each for a total of $1600 [to assure, pursuant to statute, that welfare payments received by the plaintiff are repaid to the state from the back pay judgment received in the case]. Plaintiff additionally may have a judgment against both defendants for attorney fees ... [and] may have court costs taxed in the usual way.

96 LRRM at 2837.

Applying this approach to the facts in the case at bar, I conclude that Plaintiff may have a judgment against both Defendants in the amount of the stipulated back wages, Nine Thousand Eight Hundred Forty–Six Dollars and Forty Cents ($9,846.40) plus the stipulated attorney fees and costs, Seven Thousand Five Hundred Dollars ($7,500), for a total of Seventeen Thousand Three Hundred Forty–Six Dollars and Forty Cents ($17,346.40). Furthermore, Plaintiff shall take an additional Five Hundred Eighty–Five Dollars ($585) from the Union in compensation for lost strike benefits. Each Defendant shall bear one–half the post–judgment interest on the Seventeen Thousand Three Hundred Forty–Six Dollars and Forty Cent ($17,346.40) amount, and Defendant Union shall bear the post–judgment interest on the Five Hundred Eighty–Five Dollar ($585) amount.

IT IS SO ORDERED.