845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul R. LAMOREAUX, Plaintiff-Counter Defendant-Appellant,
v.
LEAR SIEGLER, INC., Defendant-Appellee,
Intentional Union, United Automobile, Aerospace,
Agricultural Implement Workers of America, Local
330, Defendants-Counter Plaintiffs-Appellees.
 No. 87-1153.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and THOMAS GRAY HULL*, Chief Judge.
 PER CURIAM:
 
 
 1
 Plaintiff, Paul R. Lamoreaux, appeals from the judgment of the district court granting defendants' motions for summary judgment on plaintiff's action brought pursuant to Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a). For the following reasons, we AFFIRM.
 
 I.
 
 2
 Prior to his discharge, Lamoreaux had been employed by defendant Lear Siegler, Inc. ("LSI") for approximately twenty-five years. During the course of his employment, Lamoreaux had been designated as a union steward from 1978 until 1981, and again from April 1983 until his discharge in September 1983.
 
 
 3
 As a shop steward, Lamoreaux's duties, rights and responsibilities were governed by the collective bargaining agreement ("Agreement") concluded between LSI and Local 330, International Union, United Automobile, Aerospace, Agricultural Implement Workers of America ("UAW"). Article XII, Section 1 of the Agreement states:
 
 
 4
 All Union representatives who are allowed time for the purpose of handling grievances that arise under their jurisdiction, or for attending Shop Committee meetings, will punch the time card provided after advising their Supervisor they are leaving their work station for the purpose of handling a grievance and advising him of the specific grievance and location to be visited, or committee meeting, and punch the card back in when he is ready to return to work, advising the Supervisor he is again available for work. Prior to entering an area other than his own work area, the Union representative will contact the Foreman of the area and advise him of the specific grievance and the employee or employees whom he will contact. Time spent by Union representatives with management at management's request will not be counted against the Union representative as part of his Allowable Time. Time spent by Union representatives must be restricted to straight time hours, unless a specific grievance arises during and pertaining to employees and work during the overtime hours in question.
 
 
 5
 Rule of Conduct 15 of the Agreement prohibits an employee from refusing to accept a reasonable work assignment or work place location assigned by a supervisor. If such an assignment or work place location is refused, the contractual penalty is a warning and three-day suspension for the first transgression, and discharge for the second.
 
 
 6
 The incident which immediately led to Lamoreaux's discharge was prompted by a disagreement between Lamoreaux and LSI concerning their respective interpretations of Article XII, Section 1, and to what extent Rule 15 applies to a shop steward who is ostensibly on "union time." Essentially, Lamoreaux disagreed with LSI's position that Article XII, Section 1, should be followed strictly, and that if a steward was given an order pursuant to Rule 15, his sole option was to return to work and file a grievance. Lamoreaux had been disciplined on two prior occasions for violations of Rule 15.
 
 
 7
 On September 21, 1983, an employee of LSI informed Lamoreaux that a supervisor was performing work in contravention of the Agreement. Lamoreaux told his supervisor that "[he] had a problem in [his] work area, [he] was going to check it out, and [he] would be back to him within five minutes." Contrary to the requirements of Article XII, Section 1, Lamoreaux did not advise his supervisor as to the specific nature of the grievance, or identify the employee he intended to contact.[1]
 
 
 8
 As Lamoreaux investigated the situation, his supervisor and the general foreman ordered him to return to work, maintaining that he was not properly on "union time." Lamoreaux refused to comply, and continued to investigate the alleged breach of the Agreement. Later, on that same day, Lamoreaux was given written notice of termination for violation of Rule 15 or 15A.[2]
 
 
 9
 Lamoreaux filed a grievance, arguing that he had been dismissed without just cause. Lamoreaux also grieved his two previous disciplinary actions. The UAW's efforts to have Lamoreaux reinstated were unsuccessful, and the Union requested arbitration. The arbitrator found that Lamoreaux had violated Article XII, Section 1 of the Agreement, as he had not been on union time as defined in that section. Lamoreaux was also found to have violated Rule 15 for the third time; to have ignored the procedural requirements of Article XIX, Section 3 in refusing to follow the contractual grievance procedure; and to have made a threat to his supervisor when he returned to his work area.
 
 II.
 
 10
 Lamoreaux asserts his claim of unfair representation as a hybrid Section 301 action, 29 U.S.C. Sec. 185. Such an action is composed of a claim against the relevant union for breach of its duty of fair representation, and a claim for breach of contract against the employer. Normally, when the collective bargaining agreement provides grievance procedures, an employee may not invoke Section 301 without having first employed these procedures fully, including exhaustion of contractual remedies and internal union procedures. If the employee can show that he "has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance," then "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies." Vaca v. Sipes, 386 U.S. 171, 185-86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842, 855 (1967) (emphasis in original).
 
 
 11
 To demonstrate that a union has breached its duty of fair representation, the plaintiff must prove that "... [the] union's conduct toward a member of the collective bargaining union [was] arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842, 857; Ruzica v. General Motors Corporation, 523 F.2d 306, 309 (6th Cir.1975). In Ruzica, this Circuit adopted a three-pronged standard for determining whether the requirements of Vaca v. Sipes have been met:
 
 
 12
 A union must conform its behavior to each of these threeseparate standards. First, it must treat all factors and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the Union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.
 
 
 13
 523 F.2d 306, 309-10, citing Griffin v. International Union of United Automobile Workers, 469 F.2d 181, 183 (4th Cir.1974).
 
 III.
 
 14
 As bases for this hybrid Section 301 action, Lamoreaux raises several criticisms of the UAW's efforts on his behalf. However, none of the UAW's actions constitute a breach of its duty to fairly represent Lamoreaux.
 
 
 15
 Lamoreaux contends that the UAW acted arbitrarily in refusing to use a tape recording of a conversation which occurred in May 1983 between Lamoreaux and the supervisor, Mitchner, which had been recorded surreptitiously by Lamoreaux, to challenge the credibility of Mitchner's accusation that Lamoreaux had threatened him. The UAW refused to use the tape recording based on its belief that such a secret recording was unethical.
 
 
 16
 We note initially that the subject matter of the tape recording concerned events which occurred four months prior to the incident which led to Lamoreaux's discharge. Moreover, it is clear that, even if Lamoreaux had been found not to have threatened Mitchner, the evidence of his violations of Article XII, Section 1, and Rule of Conduct 15 was more than sufficient to sustain his dismissal.
 
 
 17
 In any event, the UAW's decision not to use the tape recording was hardly arbitrary. The UAW believed, justifiably, that the use of the tape recording would be inconsistent with the interests of the bargaining unit as a whole, and that the transient interests of one employee were outweighed by the damage that would have been done to the bargaining relationship between the Union and LSI, particularly where the relevance and value of the evidence was suspect.
 
 
 18
 A union, as a collective bargaining representative, does not stand in the same position as individually-retained counsel. Because the union represents a wide range of employees in connection with a diverse spectrum of issues, the union must have broad discretion to act in the best interests of the entire membership if the collective bargaining process is to work to the benefit of the bargaining unit as a whole. As the Supreme Court stated in Ford Motor Company v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), in the context of an agreement by the union to an amendment of an existing bargaining agreement which enhanced the seniority of some employees and caused the laying off of others:
 
 
 19
 Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.
 
 
 20
 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048; see also Shamblin v. General Motors Corp., 743 F.2d 436, 438 (6th Cir.1984). Here, it cannot be said that the UAW acted without reason in acting on behalf of the bargaining unit as a whole.
 
 
 21
 Lamoreaux further argues that the UAW breached its duty of fair representation by stating that it did not intend to "blacken or besmirch" the character of Mitchner; that it failed to call Lamoreaux's ex-wife, a co-worker, and two former supervisors as witnesses; that it inadequately cross-examined witnesses; and that it failed to object "strenuously" to the introduction of certain evidence.[3] However, none of Lamoreaux's allegations are supported by evidence of arbitrariness, discrimination, or bad faith.
 
 
 22
 Accordingly, the judgment below is AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Lamoreaux also did not "punch out," as required by Article XII. However, the UAW and the Company had previously agreed that a steward was not required to "punch out" as a prerequisite to going on "union time."
 
 
 [2]
 Rule 15A prohibits an employee from refusing to take reasonable directions from the individual designated as Supervisor
 
 
 [3]
 In addition, Lamoreaux argues that the UAW was derelict in not negotiating any clarification of the contract sections relevant to his actions as steward. However, we fail to detect the level of ambiguity alleged by Lamoreaux. The relevant provisions of Article XII, Section 1, are quite clear
 Lamoreaux also alleges that there was collusion between LSI and the UAW, based upon correspondence from LSI to the UAW voicing LSI's objections to surreptitious tape recording, and the UAW's subsequent decision not to use the tape. This allegation does not create a genuine issue of material fact. There is, after all, a difference between collusion and concordance. At most, the record supports the conclusion that the UAW and LSI agreed that such recordings were unethical; there is no evidence that any collusive arrangement was made.