**William RUZICKA, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, International Union, United Automobile Aerospace and Agricultural Implement Workers of America, U.A.W., and its Local Union 166, Defendants.**

Civ. A. No. 36598.

United States District Court,
E. D. Michigan, S. D.

Aug. 13, 1981.

Robert J. Dinges, Detroit, Mich., for plaintiff.

J. R. Wheatley, Detroit, Mich., for General Motors.

M. Jay Whitman, UAW, Detroit, Mich., for UAW.

## OPINION

FEIKENS, Chief Judge.

William Ruzicka was discharged by General Motors Corporation ("G.M.") in 1970 for being intoxicated on the job and using threatening and abusive language to his supervisors. He filed a grievance through United Automobile Workers ("U.A.W.") Local 166, claiming that discharge was an unduly harsh penalty for his behavior. After he tried for over a year to obtain a hearing on the merits of his grievance, he filed this action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), against G.M., the U.A.W. International Union, and U.A.W. Local 166. For nearly the past decade, the case has been in this court and the United States Court of Appeals for the Sixth Circuit. *Ruzicka v. General Motors Corp.*, 336 F.Supp. 824 (E.D. Mich.1972), 85 L.R.R.M. 2419 (E.D.Mich. 1973), 86 L.R.R.M. 2030 (E.D.Mich.1973), *rev'd*, 523 F.2d 306 (6th Cir. 1975), *reh. denied*, 528 F.2d 912 (6th Cir. 1975), 96 L.R.R.M. 2822 (E.D.Mich.1977), *vacated*, 649 F.2d 1207 (6th Cir. 1981).

Plaintiff Ruzicka filed his grievance in accordance with the terms of a collective bargaining agreement between G.M. and the U.A.W. This controversy began when Charles Panter, chairman of the shop committee, failed to make a timely simultaneous exchange of "statements of unadjusted grievance" with Ross Hagerman, supervisor of labor relations at the G.M. plant where plaintiff worked.[1] After the deadline for this exchange passed, G.M. refused to consider plaintiff's grievance on its merits, insisting that it was no longer timely. At trial, evidence was presented of a loose practice at the plant of exchanging statements after the deadline had passed.

Hagerman also testified that . . . [i]f one side was not prepared with its statement on an exchange date, extensions of time

it appeared were freely granted. In fact such extensions were freely granted even after an exchange date had passed. This testimony was corroborated by William Moon, who succeeded Charles Panter as chairman of the shop committee on May 17, 1970.

86 L.R.R.M. at 2031. I concluded that, even if Panter was negligent, his behavior was not egregious enough to be a breach of the Local's duty of fair representation. Thus, I dismissed the case at the close of plaintiff's proofs, under Fed.R.Civ.P. 41(b). 86 L.R. R.M. 2030.

The United States Court of Appeals for the Sixth Circuit reversed. 523 F.2d 306 [*Ruzicka I*].[2] It held that plaintiff had established a *prima facie* case against Local 166.

> [T]he Local allowed the final deadline to pass without filing the Statement.... Such negligent handling of the grievance . . . amounts to unfair representation.

> •    •    •    •    •

> . . . The Union made no decision as to the merits of [plaintiff's] grievance, but merely allowed it to expire out of negligent and perfunctory handling. Thus, we must reverse the District Court's conclusion that Local 166 did not unfairly represent [plaintiff].

523 F.2d at 310. The case was remanded to enable the Local to present its evidence.

On remand, Local 166 presented little new evidence. Based on the strong language used by the Court of Appeals, I found that Local 166 had breached its duty. The Court therefore reaffirms its initial findings of fact as stated in its memorandum opinion of November 21, 1973, concluding that Panter neglected to file the Ruzicka statement of unadjusted grievance prior to the May 5, 1970 deadline.

Having affirmed this fact, it would appear that the Union must be held liable

---

1. At trial, Panter contended that he had exchanged his statement on time, or at least that he had complied substantially with the deadline. I found that he had not done so. 86 L.R.R.M. at 2031. The Court of Appeals affirmed this finding. 523 F.2d at 310.

2. I also found that the International Union had not breached its duty. This conclusion was affirmed. 523 F.2d at 309.

for breach of duty of fair representation, as that duty has already been defined in this case by the Court of Appeals.

96 L.R.R.M. at 2830.

The case returned to the Court of Appeals. 649 F.2d 1207 [*Ruzicka II*]. This time, the Court significantly clarified its earlier discussion.

> The key to *Ruzicka I*, then, was our holding that "unexplained union inaction" which substantially prejudices a member's grievance could amount to the type of arbitrary conduct which evidences unfair representation. . . .
>
> If the district court concludes that the bargaining representative's failure to timely file the grievance statement was due to reliance on the prevailing practice of freely granted extensions, that will be sufficient to relieve the union from liability.

649 F.2d at 1211. My decision was vacated, and the case was again remanded for a finding on "reliance by Panter or other union officials on the prevailing practice of freely granting extensions."

With all due respect, I do not believe that Panter's behavior has remained unexplained. I believe that I made a finding on this issue in 1973, and again in 1977. When I first dismissed plaintiff's claims, I summarized the testimony of Hagerman and Moon about non-enforcement of the exchange deadline. 86 L.R.R.M. at 2031, quoted above. I then stated, "The fact that Panter did not make the exchange, standing alone, does not show breach of the union's duty of fair representation." 86 L.R.R.M. at 2031. To the extent that this discussion may have left the matter in doubt, I explained my opinion on this issue again in 1977, and expressed my view that the Court of Appeals had already rejected the "reliance" defense.

> According to the Union, if Panter did not timely file the Ruzicka statement, he failed to do so in reliance on this prevailing shop practice. . . .
>
> This argument is not wholly unpersuasive to the Court, and were it free to decide this issue as one of first impres-

sion, the Court might very well agree with the Union. . . . But this argument, in the Court's view, has been foreclosed to the Union by the Court of Appeals decision [in *Ruzicka I*].

96 L.R.R.M. at 2830.

■ Now, the Court of Appeals has placed the issue of Panter's reliance before me again. After considering additional testimony, I find that Panter did not make a timely simultaneous exchange of the statements with Hagerman, and that his failure to do so may be attributed, at least in part, to the customary non-enforcement of exchange deadlines at the plant. Panter claimed that he made the exchange, but he apparently kept no record of the event. He explained that most exchanges at the plant did not conform with the technical requirements of the collective bargaining agreement. 86 L.R.R.M. at 2031. Whatever his recollection of this particular exchange, his lack of attention to procedural detail clearly arose from a belief, shared by Hagerman and Moon, 86 L.R.R.M. at 2031, that deadlines were not important. *See* Transcript, at 412–22. He has now restated this earlier testimony explicitly in terms of "reliance".

Because Panter relied on the non-enforcement of exchange deadlines at the plant, and because plaintiff has presented no evidence that the Local's response to G.M.'s position on timeliness violated its duty, I conclude that Local 166 did not breach its duty to represent plaintiff fairly in processing his grievance. *See Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Thus, plaintiff's § 301 actions against Local 166 and G.M. must be dismissed. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567–69, 96 S.Ct. 1048, 1057–58, 47 L.Ed.2d 231 (1976); *Humphrey v. Moore*, 375 U.S. 335, 350–51, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964).

One other issue remains. After plaintiff brought this action, the International Union and Local 166 filed a cross-claim against G.M. to compel arbitration of plaintiff's grievance. When I first dismissed plaintiff's claims, I also dismissed the unions' cross-claim. Unpublished order of Novem-

ber 29, 1973. In *Ruzicka I*, after it reversed my finding that Local 166 had not breached its duty of fair representation, the Court of Appeals also reversed my dismissal of the cross-claim.

In view of our reversal of the unfair representation conclusion, we need not decide whether the Unions' cross-claim was well taken had there been no unfair representation. Nor need we decide whether, in that event, further processing of the grievance should be ordered instead of merely providing that dismissal of the cross-claim was without prejudice.

Were we to decide that the District Court should have granted the Unions' motion for summary judgment on their cross-claim, we would affect Appellant's [plaintiff's] ability to bring his case to a conclusion. The difficulty raised by the Unions' cross-appeal is that if further processing of the grievance within the GM–UAW structure is ordered, Appellant [plaintiff] has been deprived of the opportunity to attain judicial resolution of his claim.

Thus, we are compelled to comment on the proper course of action for the District Court to take on remand. Its choice is basically between ordering the grievance submitted to arbitration or deciding itself the merits of Appellant's [plaintiff's] claim against GM.

.     .     .     .     .

We believe that these interests [enforceability of arbitration agreements and prompt relief for employees under § 301] can both be served if the District Court orders arbitration but retains jurisdiction of the case until the claims against the Local and GM are settled. 523 F.2d at 314–15.

After the case was remanded, I referred the merits of plaintiff's grievance to arbitration. *See* 96 L.R.R.M. at 2827 n.6 and 2828 n.7. The Umpire found that discharge was an unduly harsh penalty, and that G.M. was liable for reinstatement with full back pay. Plaintiff and Local 166 now contend

that the arbitration award retains vitality, even if I find that the Local did not breach its duty of fair representation.

I disagree. The unions' cross-claim proceeded on two theories. In Count I, the unions claimed that G.M.'s refusal to process plaintiff's grievance on its merits violated the collective bargaining agreement. In Count II, they appeared to seek indemnity from G.M. "If the Union defendants, or either of them, are held or found liable to plaintiff for any monetary damages, then defendant GM is or will be liable to said Union defendants for any and all of said damages assessed against them, or against either of them." Cross-claim, at 4–5. Although neither theory is particularly lucid, I believe that they can be explained in the following manner.[3] In the first Count, the unions sought arbitration of their dispute with G.M. over the effect, under the contract, of Panter's mishandling of the grievance. *See, e. g., United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). This Count could have included arguments that Panter substantially complied with the exchange deadline, or that the practice at the plant somehow modified the terms of the collective bargaining agreement. In Count II, the unions sought to have an umpire determine the merits of plaintiff's grievance, if I found that they had breached their duty to represent plaintiff fairly. *See, e. g., Vaca v. Sipes, supra*, 386 U.S. at 196, 87 S.Ct. at 919.

▪ I believe that the Court of Appeals intended to reverse only my dismissal of Count II. It stated, "In view of our reversal of the unfair representation conclusion, we need not decide whether the Unions' cross-claim was well taken had there been no unfair representation." 523 F.2d at 314, quoted above. Only the theory of Count II assumed that the duty of fair representation had been breached. Moreover, the Court discussed the tension between enforcing agreements to arbitrate and providing

---

**3.** Although this analysis omits ambiguities in the language of the two Counts, it addresses

the two distinct theories upon which the unions could have proceeded in their cross-claim.

prompt remedies for violations of § 301. 523 F.2d at 314–15. This discussion could have applied only to Count II. Thus, I conclude that my dismissal of Count I remained intact.[4]

■ From the language quoted above, I also conclude that the reversal of Count II was predicated upon the assumption that Local 166 would be found to have breached its duty of fair representation. I have now decided once again that it did not. Without the breach, there is no grievance to arbitrate. For this reason, the arbitration award is unenforceable.

An appropriate order is entered with this opinion.

4. In the event that this case is appealed again, I add the following observations to assist the Court of Appeals in terminating this litigation. As I now interpret Count I of the unions' cross-claim, G.M. should have been compelled to arbitrate the issue of the effect of plant practice on the enforceability of the exchange deadline. See, e. g., United Steelworkers of America v. American Manufacturing Co., supra. The language of Count I did not state this claim clearly, however, and the unions never pressed this argument at any time during the litigation. At this late date, I find that arbitration of this issue would be unjust.

The unions have never presented any evidence that the plant practice "extended" the exchange deadline more than a few days. In this case, William Moon did not try to exchange plaintiff's statement with G.M. officials until three weeks after it was due. Thus, even if plant practice softened the strict timeliness requirement to a certain degree, plaintiff's grievance was still untimely.

Under normal circumstances, this issue of contract interpretation would be decided by an umpire. United Steelworkers of America v. American Manufacturing Co., supra. In this peculiar situation, however, I am convinced that such a gesture would be futile. First, neither the International Union nor Local 166 has taken the position that further arbitration should be ordered. Indeed, the International Union has taken no interest in any aspect of this case since the Court of Appeals, in Ruzicka I, affirmed my finding that it had not breached its duty. Whether or not this lack of concern constitutes withdrawal of this Count, it underscores the fact that the unions do not appear interested in prolonging this case. Ten years have passed since the complaint was filed. I have already heard all of the evidence on this issue as part of plaintiff's fair representation claim. If this issue was referred to arbitration, it would be decided on very stale evidence. Arbitration is intended to produce a prompt judgment on a fresh record. To the degree that these goals have not already been thwarted, they are better served if I decide the issue myself. See Vaca v. Sipes, supra, 386 U.S. at 196, 87 S.Ct. at 919 (court may decide contract issue after finding breach of duty of fair representation). I find no evidence from which anyone could conclude that the plant practice modified the contract enough to make plaintiff's grievance timely.