712 F.2d 225
 113 L.R.R.M. (BNA) 3500, 98 Lab.Cas. P 10,298
 JOURNEYMEN PIPE FITTERS LOCAL 392, Affiliated with the
United Association of Journeymen and Apprentices
of the Plumbing and Pipe Fitting
Industry of the United States
and Canada, AFL-CIO,
Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 80-1757.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 4, 1982.
Decided July 8, 1983.
 
 Harold G. Korbee (argued), Wood, Lamping, Slutz & Reckman, Cincinnati, Ohio, for petitioner.
 Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Paul Bateman (argued), Emil Farkas, Director Region 9, N.L.R.B., Cincinnati, Ohio, for respondent.
 Before MERRITT and JONES, Circuit Judges, and TAYLOR, District Judge.*
 PER CURIAM.
 
 
 1
 Journeymen Pipe Fitters Local 392 (hereinafter Union or Local 392) petitions this Court to vacate and set aside an order of the National Labor Relations Board (the Board) finding that the Union violated §§ 8(b)(1)(A)[1] and (b)(2)[2] of the National Labor Relations Act (the Act) by breaching its duty of fair representation in the operation of its exclusive hiring hall. The Board has cross-petitioned for enforcement of its order. For the reasons stated below, we deny enforcement of the Board's order.
 
 
 2
 * A
 
 
 3
 The Union is signatory to a collective bargaining agreement with the Mechanical Contractors Association of Cincinnati, providing that it shall maintain an exclusive hiring hall for the referral of qualified employees to available employment. Section 3, Article 4 of this agreement mandates that "[q]ualified applicants shall be registered on the appropriate craft out-of-work list in the order and time and date of registration" (emphasis added). Additionally, Section 4 provides that qualified workers are to be referred "from the out-of-work record on a first-in, first-out basis, that is, the first man registered shall be the first man referred" (emphasis added). Neither the terms "list" or "record" nor the precise method of registration is defined by the contract.
 
 
 4
 Prior to August 1977, and subsequent to January 1979, Local 392 kept a summary list of persons who filed registration forms with the hiring hall. Each registrant's name was entered on this list according to the date and time his registration form was submitted. After a registrant's name was placed on this list, his registration form was filed alphabetically in a cabinet. During this period, Local 392 made referrals from the summary list. Further, in order to keep its members and other registrants appraised of the specific collective bargaining agreement provisions that were applicable to the hiring hall, the Union prominently displayed a large-scale notice in the hiring hall.
 
 
 5
 However, from August 1977 to January 1979, a period described by the Union as one of high employment, Local 392 did not follow the above procedure. Rather than maintain a summary out-of-work list, the Union's business manager, R.C. Sullivan, used only the applicant's registration forms as the vehicle for referral, which he kept in a pile in the order of their submission. When a job request was received, the business manager relied on these forms to ascertain who was present in the hiring hall on that particular day. Those registrants meeting the job specifications were referred. If there were an insufficient number of persons in the hall, Mr. Sullivan would use a variety of means to obtain individuals for referral. In some instances, he would call sister locals where unemployment was high; in others, he would telephone persons whom he believed would be laid off in the near future. Local 392 did not inform any of the hiring hall applicants about these latter practices.
 
 
 6
 Gary McKibben, a member of a sister local, had utilized Local 392's hiring hall on numerous occasions in the past to obtain employment. On March 13, 1978, he registered with the Union's hiring hall. Business manager Sullivan offered to refer McKibben to a welding job with Kaiser Construction Company. But McKibben, after informing Sullivan that he did not have a welding certificate and therefore felt unqualified, declined the offer. Pursuant to the local's practice, McKibben's registration form was subsequently filed in the hiring hall cabinet. Although Local 392 subsequently received in excess of 200 requests for nonwelder pipe fitters from the Kaiser Company alone, McKibben was never referred to any of these positions, even though qualified to perform them.
 
 
 7
 Subsequently, McKibben filed an unfair labor practice charge against Local 392 on May 24, 1978. Approximately seven months later, on January 25, 1979, the Board's general counsel filed a complaint alleging that Local 392 discriminatorily, arbitrarily and unreasonably failed to refer McKibben to employment. This action allegedly breached the Union's duty of fair representation and thereby constituted a violation of §§ 8(b)(1)(A) and (b)(2). A hearing was convened before Administrative Law Judge (ALJ) Robert Mullins, and the only witness to testify was business manager Sullivan. In his decision dated December 6, 1979, the ALJ concluded that Local 392 had violated the above-mentioned sections of the Act. On review, a three-member panel of the Board affirmed the ALJ.
 
 B
 
 8
 In finding a violation of the Act, both the ALJ and the members of the Board focused on business manager Sullivan's failure to maintain the prescribed out-of-work list. Members Jenkins and Penello, adopting the rulings, findings and conclusions of the ALJ in their entirety, premised liability on a breach of the duty of fair representation. Relying on Miranda Fuel Company, 140 NLRB 181 (1962), these members found that the Union's failure to maintain the list was in contravention of the collective bargaining agreement's provision requiring referral on a "first-in, first-out" basis. The alleged nonfulfillment of the contract gave rise to the breach of the duty of fair representation. These members also found this duty breached by Local 392's failure to adhere to any objective criteria in referring applicants to employment. In their opinion, business manager Sullivan employed his unfettered discretion in making referrals. Finally, the majority found that the Union never informed either its members or prospective applicants of the modified referral procedures and that this omission was also a breach of the duty of fair representation.
 
 
 9
 Alternatively, the ALJ found that the Union's failure to maintain the list was in itself a violation of §§ 8(b)(1)(A) and (b)(2) since this omission demonstrated that Local 392, by controlling an applicant's employment opportunities, effectively encouraged Union membership in violation of the Act.
 
 
 10
 Chairman Fanning, concurring separately, agreed that by failing to follow the labor contract's provisions, the Union violated the Act. He did not, however, join in the majority's conclusion that Local 392 also breached its duty of fair representation.
 
 II
 Breach of the Duty of Fair Representation
 
 11
 As the exclusive labor representative of employees in a bargaining unit, a union has a statutorily-imposed duty to fairly represent all of the employees, union members or not, in the collective bargaining process and in the administration of the resulting labor contract. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). This Court has adopted the three-pronged standard enunciation by the Fourth Circuit in Griffin v. International Union of United Automobile Workers, 469 F.2d 181, 183 (4th Cir.1974), for determining whether this duty has been breached:
 
 
 12
 A union must conform its behavior to each of these three separate standards. First, it must treat all factors and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the Union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.
 
 
 13
 Ruzicka v. General Motors Corp., 523 F.2d 306, 309-10 (6th Cir.1975).
 
 
 14
 Under current law, an employee who has not been fairly represented may seek relief in more than one forum: he or she may bring an action in federal court under § 301 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 185, or may obtain relief before the Board. In Miranda Fuel Company, 140 N.L.R.B. 181 (1962), a majority of the Board found that a breach of a union's duty of fair representation constituted an unfair labor practice. Finding that § 7 of the National Labor Relations Act vests employees with the "right to be free from unfair or irrelevant treatment by their exclusive bargaining agent in matters affecting their employment," the Board concluded that "Section 8(b)(1)(A) of the Act accordingly prohibits labor organizations from taking action against any employee upon considerations or classifications which are irrelevant, invidious, or unfair." Id. at 185. Similarly, the Board held that a union violates § 8(b)(2), when it causes an employer to derogate an employee's status based on unfair or arbitrary classifications. Id. at 186. Thus, under this doctrine, the Board is empowered under § 10 of the Act to determine whether any conduct violates the unfair labor proscription of § 8 and may issue orders which will remedy any harm suffered.
 
 
 15
 As noted previously, the majority of the Board panel found that Business Manager Sullivan's management of the hiring hall during the period violated the collective bargaining agreement by arbitrarily depriving employees of their right to be referred on a first-in, first-out basis. Thus, the Board majority found that the duty of fair representation had been breached by this unexplained modification and thus gave rise, pursuant to the doctrine announced in Miranda Fuel, to a violation of §§ 8(b)(1)(A) and (b)(2).
 
 
 16
 On appeal, Local 392 argues that there can be no breach of the duty of fair representation, and thus no breach of § 8 of the Act, absent evidence indicating that the Union was motivated by some hostile, invidious or arbitrary conduct. In retort, the Board simply argues that such a showing was made and also urges this Court to adopt the doctrine enunciated in Miranda Fuel. We decline to decide at this time whether the method of establishing a violation of §§ 8(b)(1)(A) and (b)(2) under the Miranda Fuel doctrine is sufficient in this Circuit. Since we reject the finding of the ALJ and the Board majority that the duty of fair representation was breached, a Miranda Fuel analysis is unnecessary. In our opinion, Local 392 simply did not contravene any of the standards set forth in Ruzicka.
 
 
 17
 Our review of the record convinces us that there is no evidence present to suggest that Local 392 or business manager Sullivan acted with hostility or a discriminatory motive in the operation of the hiring hall. See International Union of Operating Engineers Local 406 v. NLRB, 701 F.2d 504 (5th Cir., 1983). Nor can we discover any testimony which indicates that the business manager failed to execute his duties with respect to the hiring hall honestly and in good faith. At worst, Mr. Sullivan's use of the registration forms instead of the summary list, can be characterized as poor judgment. Negligence, poor judgment or ineptitude are insufficient, standing alone, to establish a breach of the duty of fair representation. NLRB v. American Postal Workers Union, 618 F.2d 1249, 1254 (8th Cir.1980). Rather, "[a] wide range of reasonableness" should be afforded a union which exercises its duties in good faith and with honest purpose. Id. Moreover, we cannot say that the Union's conduct was so arbitrary or so unreasonable as to be violative of its duty. See id. at 1256. Under such circumstances, there is simply no basis upon which we can find a violation of the duty of fair representation. See Local 406, supra. Concomitantly, since we do not find a breach of the duty of fair representation, we, perforce, cannot find through the use of the Miranda Fuel doctrine that Local 392 violated §§ 8(b)(1)(A) and (b)(2) of the Act.
 
 
 18
 Accordingly, the only question left for review is whether the business manager's use of the referral slips, as opposed to the use of the summary list, deviated from the clear contractual provisions of the collective bargaining agreement, thus constituting an independent violation of the Act.
 
 III
 Deviation From the Contract
 
 19
 Again, the parties have apparently placed this Court on the horns of a dilemma concerning the type of proof required to prove a direct violation of §§ 8(b)(1)(A) and (b)(2) of the Act. The Board has consistently held that a union violates §§ 8(b)(1)(A) and (b)(2) of the Act where it refuses to refer an applicant for employment pursuant to the terms of an exclusive referral system. The Board has articulated this proposition as follows:
 
 
 20
 [A]uthority supports the view that where referral under an exclusive hiring hall agreement is conditioned upon clear and unambiguous standards set forth in that agreement, the refusal to refer an employee who qualifies under such standards, without more, suffices to establish, prima facie, a violation of ... the Act.
 
 
 21
 International Brotherhood of Electrical Workers, 223 NLRB 899, 901 (1976) (emphasis added). When such a deviation is shown, burden of the production shifts to the union to rebut the prima facie case by showing that either the deviation was permissible under the exceptions contained in the collective bargaining agreement, or alternatively, that the deviation was not discriminatorily motivated. See Sheet Metal Workers Local 20, 253 NLRB 166, 169 n. 5 (1980). This pattern of proof is predicated upon the principle that:
 
 
 22
 When a union prevents an employee from being hired or causes an employee's discharge, it has demonstrated its influence over the employee and its power to affect his livelihood in so dramatic a way that we will infer--, or, if you please, adopted a presumption that--the effect of its action is to encourage union membership on the part of all employees who have perceived that exercise of power.
 
 
 23
 Local 18, Operating Engineers, 204 NLRB 681 (1973).
 
 
 24
 The Ninth Circuit has employed this doctrine in determining whether the Act has been violated. In NLRB v. International Association of Bridge, Structural and Ornamental Iron Workers, 600 F.2d 770 (9th Cir.1979) (Local 433 ), the Board petitioned for enforcement of its cease and desist order concerning the operation of a hiring hall in disregard of the collective bargaining agreement. This agreement specified an orderly and detailed procedure for referring employees. Initially, the contract defined five categories of workers and assigned each a priority of placement ranking, the highest priority being assigned to the most experienced worker. Upon entrance into the hiring hall, each applicant seeking employment was required to sign an out-of-work list for his priority group. After doing so, a union official assigned that applicant an out-of-work number. Each Monday, a roll call was held where applicants who were present and who answered the call were given new numbers based on the number of dispatches made the previous week. After receiving an "open order," the union's business agent would call out the order on the public address system. All applicants could then bid on that job and the bidding applicant with the lowest number would receive the job referral.
 
 
 25
 In Local 433, the ALJ found seventy-six specific instances in which the union dispatched employees without adhering to the referral procedure. In addition, there was evidence that union officials engaged in threatening and perpetrating acts of violence on hiring hall applicants who protested against these deviations.
 
 
 26
 The Ninth Circuit, in deciding whether §§ 8(b)(1)(A) and (b)(2) had been violated, remarked:
 
 
 27
 No specific intent to discriminate on the basis of union membership need be shown; if the foreseeable result of discrimination is the encouragement of union membership, it must be supported by a legitimate purpose. Id. The natural consequences of referral preferences is to encourage membership.
 
 
 28
 The Union's collective bargaining agreement contained an explicit and unambiguous procedure governing the dispatch of job applicants. The Board's uncontested findings showed that the Union's business agents made 76 referrals in violation of the terms of the agreement. These violations were not isolated. Rather, they were part of a systematic and continuous pattern of abuse in which Union business agents divided the Union's jurisdiction into "fiefdoms from which they dispensed patronage", openly backdooring referrals in violation of the agreement. The applicants who objected to the practice were faced with threats and acts of violence. The Union offered no reasons, legitimate or otherwise, to justify its practices.
 
 
 29
 600 F.2d at 777 (citations omitted). Noting that the Union's collective bargaining agreement contained an explicit and unambiguous procedure for referral, the appellate court concluded that the evidence supported the Board's finding that the deviations from the labor contract were part and parcel of a systematic pattern of abuse. The court closed its consideration of the case with the following words:
 
 
 30
 In these circumstances we conclude that the Union's arbitrary display of power violated §§ 8(b)(1)(A) and 8(b)(2) of the Act. See Laborers and Hod Carriers Local No. 341, 564 F.2d at 839-40 [ (9th Cir.1977) ]. As the Board found, the natural and foreseeable consequences of a system by which the Union's agents arbitrarily dispensed their patronage was to encourage loyalty of the job applicants to the Union and its agents. See [NLRB v.] International Longshoremen's Union Local 13, 549 F.2d [1346] at 1353 [ (9th Cir.1977) ].
 
 
 31
 While other courts have refused to follow this inferential mode of proof by requiring that there be specific evidence of an antiunion animus, see e.g. NLRB v. New York Typographical Union, 632 F.2d 171, 180-81 (2d Cir.1980), we, once again, need not decide which manner of proof is required or even preferred for establishing a violation of the Act. Even if we were to apply the standards of Local 433 as urged by the Board, we would conclude that the Act had not been violated.
 
 
 32
 We are unconvinced that the Union's business agent deviated from clear and unambiguous provisions in the Union's collective bargaining agreement at issue. It is this act which raises the presumption of a discriminatory motive and establishes a prima facie violation of §§ 8(b)(1)(A) and (b)(2) requiring a union to justify and explain its practices. Without such a presumption, there must be some other proof of the proscribed motivation. The Union's collective bargaining agreement does not outline the referral procedure in very great detail. Rather, as noted previously the agreement calls for the maintenance of an out-of-work list and, at the same time, calls for referrals to be made from an out-of-work record. Neither term is defined. Under such circumstances, the Union's business manager could have reasonably believed that the two documents could have been different. Further, agent Sullivan could have believed that a list was not per se required for referrals as long as referrals were made from some type of out-of-work record. In our opinion, the maintenance of the registration slips in their order of acceptance could constitute an out-of-work record. Nor are we convinced that the natural and foreseeable consequences of business agent Sullivan's conduct was the encouragement of union loyalty. Without the deviation from clear and unambiguous contractual provisions, the Board's presumption of discriminatory motive does not arise. Instead, there must be separate and distinct proof of the unlawful motive. The record in this case is totally devoid of any such evidence. Given this fact, the Board has failed to support its finding of a violation of the Act with substantial evidence.
 
 
 33
 Accordingly, the Board's order is set aside and the cross-petition for enforcement is DENIED.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Section 8(b)(1)(A), 29 U.S.C. § 158(b)(1)(A) provides in pertinent part:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein:
 
 
 [2]
 Section 8(b)(2), 29 U.S.C. § 158(b)(2) provides in pertinent part:
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 * * *
 (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;